551 P.2d 69

**CAPITOL FOUNDRY, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Carlos R. Velasquez, Respondent Employee.**

**No. 1 CA–IC 1385.**

Court of Appeals of Arizona,
Division 1,
Department C.
June 22, 1976.

Twitty, Sievwright & Mills by John F. Mills, Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Jerome & Gibson, P. C. by D. A. Jerome, Phoenix, for respondent employee.

## OPINION

NELSON, Judge.

Petitioner Capitol Foundry (Capitol Foundry) seeks review of the Industrial Commission's award granting the petition to reopen of the respondent, Carlos Velas-

quez (Velasquez), for a new, additional or previously undiscovered disability or condition.

Velasquez sustained an industrial injury on March 18, 1970 when he fell and injured his left arm and hand while dismounting a moving railroad car. A notice of claim status issued by Capitol Foundry on November 30, 1971 terminated medical benefits and temporary compensation as of October 29, 1971. This notice was unprotested and became final. On December 2, 1971 a notice of permanent disability was issued by Capitol Foundry, reflecting a 5% disability of the left hand as a result of the industrial injury.

A petition to reopen was filed by Velasquez on May 24, 1974. This petition was accompanied by a supporting medical report of Sarah B. Nelson, M.D. Upon Capitol Foundry's denial of the petition to reopen, Velasquez timely filed a request for hearing, alleging that he was suffering from a severe depressive neurosis which requires individual psychotherapy, medication and observation. The hearing officer found that Velasquez had sustained his burden of proving a new, additional or previously undiscovered psychiatric condition or disability as a result of the 1970 industrial injury. After the hearing officer affirmed his decision on review, the matter was brought here on certiorari. We affirm the award of the Industrial Commission of Arizona.

■ On appeal Capitol Foundry claims that Velasquez did not sustain his burden of proof. *Davila v. Industrial Commission,* 98 Ariz. 258, 403 P.2d 812 (1965). The employer further contends that the medical testimony in this case constitutes an insufficient basis for an award. While there is testimony as to the condition of Velasquez at the time of the 1973 psychiatric examinations, there is no testimony as to respondent's condition at the closing of the case in 1971. See: *Elliott v. Industrial Commission,* 4 Ariz.App. 181, 418 P.2d 611 (1966). Language is cited to the effect that testimony upon a petition to reopen must

be comparative in nature. *Elliott,* supra, and *Arizona State Welfare Department v. Industrial Commission,* 25 Ariz.App. 6, 540 P.2d 737 (1975).

The cases cited by Capitol Foundry to establish the lack of comparative medical testimony do not require the result sought by Capitol Foundry. In *Elliott v. Industrial Commission,* supra, a specific determination was made that the claimant was totally disabled—the major part of the disability having a non-industrial psychogenic basis, 15% being attributable to a physical disability. The award based on these findings became final. Later a petition to reopen was filed alleging total disability. This Court affirmed the Industrial Commission's award denying the petition. There was no showing that conditions had changed since the time that the earlier award became final. In the instant case there were no specific findings previously made as to petitioner's claimed neurosis which would constitute an adequate basis for comparison.

Had there been a conclusive finding as to Velasquez' mental condition at the time of the closing of the award, we would be bound by the decisions of this Court requiring comparative testimony. *Elliott,* supra; *Arizona State Welfare Department v. Industrial Commission,* supra.

Capitol Foundry has also cited the case of *State Compensation Fund and Elster's v. Industrial Commission,* 23 Ariz.App. 505, 534 P.2d 436 (1975). The Arizona Supreme Court has recently vacated that decision. *State Compensation Fund and Elster's v. Industrial Commission,* 113 Ariz. 65, 546 P.2d 801 (1976). There the Court made no mention of the comparative evidence issue. It was concluded that the evidence reasonably supported the award of the hearing officer and that the burden of proof upon a petition to reopen had been met.

■ A reading of 3 Larson, *Workmen's Compensation Law,* § 81.33, illustrates that the requirement of comparative evidence can be satisfied by a showing of the ap-

pearance of a factor that is *new in kind rather than in degree:*

"The requirement that the evidence of change be comparative is satisfied not only by testimony cast in terms of relatively higher or lower percentages of disability or degrees of seriousness of the condition, but also by a showing of the appearance of a factor that is new in kind rather than in degree. *For example, if the first award was based solely on physical symptoms, and if a neurotic condition superimposes itself later, this is obviously a change enough in itself.* Similarly, the intervention of serious surgery, such as disc operations, leading to a new appraisal of claimant's condition, will warrant a reopening." Larson, *Workmen's Compensation Law,* § 81.33 at 349. (Emphasis added)

*Moccia v. Eclipse Pioneer Division of Bendix Aviation,* 57 N.J.Super. 470, 155 A.2d 129 (1959) is also instructive on the question of comparative evidence. There the Court stated:

"In this case it is clear that if the neurosis did not develop until after the third hearing before Deputy Director Kaltz, then there is nothing with which to compare it. That is, if the disability, up through the third hearing, was entirely a physical one (whether its cause was physical or psychological), then an increase in disability due to a new and strictly psychological complaint, with both psychological causes and symptoms, resulting from the same trauma but manifested later, can be established by indicating that the combined physical condition and psychological condition rendered the petitioner more disabled than she would be if she were suffering only from the physical manifestations." 57 N.J.Super. at 477–478, 155 A.2d at 133.

On reopening the inquiry is limited to the existence of new and additional disability *"which was unknown and was not considered at the time of the original award."* Davila v. Industrial Commission, supra, 98 Ariz. at 262, 403 P.2d at 815. (Emphasis added) Issues which were determined or could have been determined in the original findings and award of the Commission are res judicata. *London v. Industrial Commission,* 71 Ariz. 111, 223 P.2d 929 (1950). It is reasonably clear to us that Velasquez' mental condition was not an issue in the previous award. Similarly we believe that there was sufficient evidence for the hearing officer to infer that the condition upon which reopening was based was not *known* at the time the original award was closed.

While Dr. Nelson could not testify specifically as to Velasquez' condition prior to the time of her 1973 examination, and thus would give no opinion as to the exact time the neurosis first occurred, she offered this comment in response to the question of Capitol Foundry's counsel:

"Q.: (by Mr. Mills) . . . would it be a safe assumption that the depressive neurosis insofar as is disabling to him occurred immediately following the injury?
"A.: I think it grew out of the injury and became progressively worse as events occurred to stress him further."

Dr. Nelson also stated that Velasquez' condition was severe enough now to keep him from being productive.

This specific testimony, taken along with Dr. Nelson's testimony as a whole, her references to the medical history taken from Velasquez, and her familiarity with his records, psychological testing and subsequent history, suggests that there was a reasonable basis for believing that the claimant's condition had evolved since 1971.[1]

---

1. Dr. Nelson testified: " . . . As I see it, this is a man who was working or was supporting his family. He had an accident, and since then he has not been working or supporting his family, despite multiple and varying efforts to get him back to work. He has had the benefit of psychotherapeutic efforts and chemotherapeutic efforts, he has had rehabilitation treatment, and despite all this, he has been unable, for what I believe to be

There is adequate evidence to support the conclusion that by 1973, Velasquez' condition was of sufficient severity to cause him to seek professional help. Both David I. Buchin, M.D. and Dr. Nelson performed every test they deemed appropriate, and took as complete a medical history as circumstances would allow.[2] Dr. Buchin stated that there was no past history of any psychiatric treatment or psychiatric hospital care.[3]

We recognize that the credibility of the claimant in relating his medical history is an important element in this case. Dr. Nelson stated that she sincerely and definitely believed that Mr. Velasquez was not a malingerer. While Dr. Buchin stated that Velasquez seemed to answer questions that would make him appear ill, he did not believe that he was a malingerer. Velasquez testified at the hearing before the Commission and the hearing officer had an opportunity to assess his behavior and make judgments as to his credibility. *Russell v. Industrial Commission,* 98 Ariz. 138, 402 P.2d 561 (1965); *Royal Globe Insurance Company v. Industrial Commission,* 20 Ariz. App. 432, 513 P.2d 970 (1973).

■ This Court does not weigh the evidence, but considers it in a light most favorable to sustaining the award. *Malinski v. Industrial Commission,* 103 Ariz. 213, 439 P.2d 485 (1968). The evidence before the Commission was sufficient and reasonable to support the award and to satisfy the rationale of the requirements on reopening. This Court will not negate a fact finding of the Commission unless the evidence allows only one inference to be drawn. *Micucci v. Industrial Commission,* 108 Ariz. 194, 494 P.2d 1324 (1972). See also *State Compensation Fund and Elster's*

*v. Industrial Commission,* supra, 113 Ariz. 65, 546 P.2d 801 (1976).

■ Capitol Foundry has emphasized that Velasquez suffered from a severe personality disorder or structure formulated in childhood. The testimony of Dr. Nelson distinguished this basic personality disorder from the current problem—depressive neurosis. The hearing officer recognized this distinction in his findings. Medical testimony indicated that Velasquez had an inadequate, weak or marginal personality. Testimony showed that the injury was the proverbial "last straw" or focal point that allowed the debilitating depressive neurosis to surface. This is sufficient to constitute legal causation under Arizona law. *Stringer v. Industrial Commission,* 16 Ariz. App. 292, 492 P.2d 1230 (1972).

■ On appeal Capitol Foundry also argues that the testimony of the doctors consisted of conjecture and speculation. While we recognize that the testimony as to *when* the condition first appeared, or what the condition was like prior to the 1973 examinations could not be couched in terms of certainty, we find that sufficient evidence exists to support the hearing officer's finding that the condition was new. The Arizona case law cited by Capitol Foundry to support their position goes to the issue of conjecture and speculation in terms of medical testimony as to *causation.* In this case the medical testimony is *unequivocal* on the issue of causation. Both doctors specifically related the depressive neurosis to the work injury. Dr. Nelson stated that the accident was the proximate cause of Velasquez' condition.

The medical testimony as to causation in this case meets the requirements set forth by this Court in *Harbor Insurance*

---

emotional and personality reasons, to take advantage of these aids."

2. The record reflects that Velasquez had some difficulty communicating in the English language and preferred to speak Spanish.

3. Both doctors were questioned as to whether the fact that Velasquez had been treated as

early as 1968 for anxiety and depression would alter their opinions. Dr. Nelson stated that it would not necessarily alter the situation. Dr. Buchin testified that there would be no difference in his opinion "unless it was exactly the same picture."

**84**

Company v. Industrial Commission, 25 Ariz. App. 610, 545 P.2d 458 (1976); *State Compensation Fund v. Industrial Commission,* 24 Ariz.App. 31, 535 P.2d 623 (1975); *Hume v. Industrial Commission,* 18 Ariz. App. 211, 501 P.2d 52 (1972). Standards set forth in cases dealing with analogous issues (neurosis or conversion hysteria) have also been met. *Tatman v. Provincial Homes,* 94 Ariz. 165, 382 P.2d 573 (1963); *Murray v. Industrial Commission,* 87 Ariz. 190, 349 P.2d 627 (1960); *Stringer v. Industrial Commission,* supra; *Selvidge v. American Airlines, Inc.,* 4 Ariz.App. 104, 417 P.2d 738 (1966).

Capitol Foundry's final argument is based upon the contention that Dr. Nelson's opinions were based in part on false premises. The only arguable attack on Dr. Nelson's testimony is found in the fact that she understood that Velasquez had not worked since the 1970 accident. Velasquez' own testimony contradicts this fact. Sometime in 1971 or 1972 he returned to work at Capitol Foundry on a light duty status. Subsequent to this, physical and mental problems developed, causing him to cease work. We do not feel that this constitutes a sufficient basis for setting aside the award. While Dr. Nelson's testimony as to that aspect of Velasquez' history was based on a faulty *factual* premise, this does not impair her medical findings to any significant degree. The hearing officer had all of the testimony before him, including that which would correct any erroneous interpretation of the facts. This conclusion is consistent with *Hemphill v. Industrial Commission,* 91 Ariz. 322, 372 P.2d 327 (1962); *McAllister v. Industrial Commission,* 83 Ariz. 213, 319 P.2d 129 (1957); *Tashner v. Industrial Commission,* 62 Ariz. 333, 157 P. 2d 608 (1945); *Masters v. Industrial Commission,* 15 Ariz.App. 512, 489 P.2d 1214 (1971).

The award of the Industrial Commission is affirmed.

HAIRE, C. J., Division 1, and EUBANK, P. J., Department C, concur.