655 P.2d 366

**Deborah K. MAKINSON, Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Polypore, Inc., Respondent Employer,**

**Pacific Employers Insurance Company, Respondent Carrier.**

**No. 1 CA–IC 2559.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 30, 1982.

Rehearing Denied Nov. 16, 1982.

---

Tretschok, McNamara & Clymer, P.C. by Brian I. Clymer, Tucson, for petitioner employee.

James A. Overholt, Acting Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Donald L. Cross, Larry L. Smith, Phoenix, for respondents.

OPINION

CONTRERAS, Judge.

The sole issue in this special action review of an Industrial Commission award is whether the administrative law judge erred in denying the petition to reopen while finding that the medical testimony established a pre-existing psychoneurosis which caused the petitioner to "perpetuate her complaints" following a physical industrial injury. We find no error and affirm the award.

Petitioner employee Deborah K. Makinson (petitioner) suffered an injury to her back in an industrial accident on May 31, 1979, while she was working for respondent employer Polypore, Inc. Her claim for workmen's compensation benefits was accepted by respondent carrier Pacific Employers Insurance Co. which paid benefits until September 5, 1979, at which time the claim was closed with the finding of no residual permanent impairment resulting from the industrial accident. That determination by respondent carrier was not protested and became final.

Petitioner filed a petition to reopen on March 8, 1980, which was denied by respondent carrier on April 1, 1980. Petitioner requested a hearing to protest the denial and two separate hearings were held. Although petitioner requested reopening based on both physical and mental disabilities, the only question raised by petitioner on review is whether the hearing judge correctly decided that there was insufficient proof that petitioner's psychological problems were sufficiently related to the industrial injury to grant a reopening.

Two psychiatrists, Howard A. Winkler, M.D. and Hubert Estes, M.D., testified as to petitioner's psychological condition. The testimony of the two psychiatrists was in conflict and the administrative law judge, taking into account the qualifications of each psychiatrist, resolved the conflict in favor of the testimony of Dr. Estes. Petitioner does not contest the administrative law judge's discretion to resolve conflicts in medical testimony, but rather argues that

the testimony of Dr. Estes compels a finding of sufficient legal causation between the psychological condition and the industrial injury. It is not disputed on review that petitioner does suffer from psychoneurosis, that this psychoneurosis pre-existed the industrial injury, and that the psychoneurosis was not discovered at the time of the closing of the industrial injury claim.

The administrative law judge's appraisal of Dr. Estes' testimony is set forth in finding of fact number 10 as follows:

> Dr. Estes as a board-certified psychiatrist in Arizona since 1957 seen [sic] the applicant two times those being October 24 and 29, 1980, and based on those plus the results of a M.M.P.I. test he had a psychologist conduct on this applicant, he arrived at a diagnosis of psychoneurosis either mixed or anxiety as she is a person with a long time neurotic tendency. He added she also has a number of phobias none of which are a result of the May 31, 1979 injury. Dr. Estes went on to say *the applicant's pre-existing psychoneurosis causes her to perpetuate her complaints* directed against the May 31, 1979 incident. This doctor went on to say he knows of her scolistic spine and *his non-medical reports plus interviews with co-workers showed the same conduct exhibited by this applicant before the instant incident of May 31, 1979.* Dr. Estes on reasonable medical probability does not believe this a case of the May 31, 1979 incident aggravating the pre-existing psychoneurosis but rather here *the psychoneurosis has resulted in perpetuation of the now given complaints.* Dr. Estes added its [sic] possible the right shoulder and arm pain is caused by degenerative arthritis as indicated in the medical reports he reviewed. Dr. Estes concluded saying in his reasonable medical probability opinion from a psychiatric standpoint there is no reason for the applicant not to return to her former job as she does not now need psychiatric treatment for the May 31, 1979 injury and in fact her increasing volume of complaints is consistent with her pre-existing pschoneurotic [sic] personality as that is how the disease

manifests its self [sic]. . . . (emphasis added).

■ Petitioner contends that the finding based on Dr. Estes' testimony that the pre-existing psychoneurosis "causes her to perpetuate her complaints" compels the conclusion that the psychoneurosis is legally "caused" by the industrial injury. Respondents argue that because petitioner's psychoneurosis causing her to exaggerate her physical complaints pre-existed the industrial injury, the injury merely gave petitioner another subject for her complaints and caused her to exaggerate her complaints regarding this injury. This, they contend, is an insufficient causal relationship between the psychoneurosis and the physical injury to justify granting reopening. We agree.

■ Just as an original injury must be causally related to the employment, a new, additional, or previously undiscovered condition must be causally related to the industrial injury. *See Miller v. Industrial Commission,* 114 Ariz. 449, 561 P.2d 773 (App. 1977). Unless this causal relationship is clearly apparent to a layman, the relationship must be established by expert medical testimony. *See, e.g., Allen v. Industrial Commission,* 124 Ariz. 173, 602 P.2d 841 (App.1979). The burden rests on the employee to show this causal relationship. *Davila v. Industrial Commission,* 98 Ariz. 258, 403 P.2d 812 (1965).

The case primarily relied upon by petitioner in support of her position is *Murray v. Industrial Commission,* 87 Ariz. 190, 349 P.2d 627 (1960). This case is distinguishable, however, as noted by respondents, because *Murray* involved "conversion hysteria." In that case, there was no evidence that the petitioner's neurosis was precipitated by any event in his life other than the industrial injury. In the present case, it is uncontroverted that the neurosis preceded the industrial injury.

*Smitty's Super Valu, Inc. v. Industrial Commission,* 126 Ariz. 367, 616 P.2d 42 (1980), also cited by petitioner, is similarly distinguishable. In *Smitty's,* there was no

evidence that the mental condition preceded the physical injury. The evidence there showed that the neurotic reaction was an engraftment upon a low back strain suffered in the industrial incident and thereby constituted a continuation or an extension of the back strain symptoms.

The petitioner does cite the following cases in which a pre-existing psychoneurosis was held to have a sufficient legal relationship to the physical industrial injury to justify reopening: *Capitol Foundry v. Industrial Commission,* 27 Ariz.App. 79, 551 P.2d 69 (1976); *Stringer v. Industrial Commission,* 16 Ariz.App. 292, 492 P.2d 1230 (1972); *International Metal Products, Division of McGraw Edison Co. v. Industrial Commission,* 2 Ariz.App. 399, 409 P.2d 319 (1965). Also of relevance, though not cited by either party, is *Martinez v. Industrial Commission,* 17 Ariz.App. 341, 498 P.2d 153 (1972).

In each of the above cases, this court found the testimony presented sufficient evidence of causation to support a reopening. In *Martinez,* the court quoted language that the industrial accident was "the peg" upon which petitioner hung his mental condition to set aside an award which found insufficient causation. In *Capitol Foundry,* the court stated:

> Testimony showed that the injury was the proverbial "last straw" or focal point that allowed the debilitating depressive neurosis to surface. This is sufficient to constitute legal causation under Arizona law....

27 Ariz.App. at 83, 551 P.2d at 73.

In *Stringer,* this court relied on testimony that the industrial incident provided a "point of focus" for the pre-existing anxieties of the applicant in setting aside an award denying the petition to reopen. In *International Metal Products,* the court held that even though the claimant was predisposed to psychiatric problems, the fact that the accident made those psychiatric problems "manifest" was sufficient to establish that the accident was the legal cause of the resulting psychiatric disability.

The medical testimony relied upon in the above cases must be carefully compared to the medical testimony presently before us. Dr. Estes' testimony is significantly different from that appearing in the Arizona decisions cited above. Whatever the language used in the previous decisions, whether "peg", "point of focus", "surface", or "manifest", the common thread is that in each case a physical injury caused a pre-existing psychoneurosis to appear *and* to interact with the physical injury in such a manner as to produce a further injurious result to the worker above that from the physical injury alone. In this case, however, Dr. Estes' testimony is merely that the pre-existing condition caused the petitioner to complain longer than if she had not had the psychoneurosis before the industrial injury.

Dr. Estes' testimony demonstrated that even before the industrial accident petitioner followed a pattern of exaggeration of her medical conditions. This testimony was noted by the administrative law judge in finding of fact number 10 in the award. The testimony was as follows:

Q. (By Mr. Cross): Dr. Estes, you indicated that the psychoneurotic mixed predated the accident?

A. Yes, that's correct.

Q. In the non-medical documents that you reviewed, the records from the coworkers, this kind of thing, did you find evidence of that sort of behavior on her part prior to this accident?

A. I did, if I can take those reports as true.

Q. Sure.

A. They certainly are extremely variable. Have many variable facts in them from what I was told by the patient, and certainly what the various coworkers reported she said does follow a pattern of exaggeration of medical condition and would be consistent with the psychoneurotic diagnosis.

Thus, the effect of the industrial accident upon this petitioner was merely to provide her with a different medical condition to

complain about. The psychoneurosis was already present and developed in petitioner by the time of the industrial accident. It was neither triggered, aggravated nor otherwise caused by the accident, but simply provided the mechanism by which petitioner perpetuated her complaints. The relationship is, at best, tenuous, and it is certainly not the type of causal relationship between physical injury and pre-existing mental condition held sufficient legal cause to support a reopening in previous Arizona cases.

While somewhat different on its facts, we find persuasive in the present case the reasoning of *Ramonett v. Industrial Commission,* 27 Ariz.App. 728, 558 P.2d 923 (1976). In that case, the causal chain was as follows. Petitioner pricked his finger on some wires, fainted and went into convulsions. As a result of the fainting and convulsions, he embarked on a series of medical tests which resulted in discovery of a condition called vasovagal bradycardia, which causes slowing of heart beat, fainting, and seizures upon sustaining a minor injury. The petitioner was dismissed from his job because his tendency to faint made him dangerous to himself and his coworkers in the employment environment. The dismissal from work and the discovery of the condition led to the development of an anxiety neurosis, which petitioner claimed was compensable as a result of the industrial injury. This court analyzed the issue as follows:

> If the industrial episode, however minor, is in any meaningful way a contributing cause of the petitioner's mental condition, then treatment for this mental condition should be covered under workmen's compensation. It is well established in the law that the industrial accident does not have to be the sole cause of an injurious result, it is sufficient if it can be shown to be "a producing cause". *Nelson v. Industrial Commission,* 24 Ariz. App. 94, at 96, 536 P.2d 215 at 217 (1975). Petitioner's predisposition toward his mental condition also would not defeat his claim; the employer "takes his employees as he finds them", *Tatman v. Provincial Homes,* 94 Ariz. 165, 382 P.2d 573 (1963), in mental as well as physical

condition. Arizona has allowed recovery for mental disability if it is caused, precipitated, or aggravated by an industrial incident.... However, the industrial incident must in some way "produce" the injurious result. As stated in *Murray, supra:*

> > The injury need not be the sole cause of disability, if it is a *producing* cause. (emphasis added) 87 Ariz. at 199, 349 P.2d at 633.
> >
> > ....
> >
> > In legal contemplation, if an injury, operating on an existing bodily condition or pre-disposition, *produces* a further injurious result, that result is caused by the injury. (emphasis added). 87 Ariz. at 199, 349 P.2d at 633.
>
> There is no contention in this case that petitioner's industrial accident had any aggravating effect on his underlying vasovagal bradycardia, nor that the accident itself caused his unemployment. The only role played by the accident was to focus attention—to initiate the investigation which eventually diagnosed the problem.

27 Ariz.App. at 729–30, 558 P.2d at 924–25.

The court held that where the only role of the industrial episode was to precipitate an investigation, the employer was not liable for the results of the investigation or the employee's emotional response to the results of the investigation.

The case at bar is similar. Here the excessive complaining by the petitioner resulted in her referral to psychiatrists who determined that (1) she had a psychoneurosis which pre-existed the industrial injury and (2) her neurotic tendencies were active and independent of the industrial incident. In both cases, the evidence establishes a condition pre-existing the industrial injury, no worse after the industrial injury than before, and which is only coincidentally revealed by an investigation following the industrial injury. We conclude that in view of the evidence presented, the administrative law judge properly denied reopening.

The award is affirmed.

EUBANK and HAIRE, JJ., concur.