695 P.2d 261

**STAINLESS SPECIALTY MANUFAC-
TURING COMPANY, Petitioner
Employer,**

**State Compensation Fund,
Petitioner Carrier,**

**v.**

**INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,**

**Don D. Appleton, Respondent
Employee.**

No. 17459–PR.

Supreme Court of Arizona,
En Banc.

Jan. 31, 1985.

Robert K. Park, Chief Counsel, State Compensation Fund by W. Smith Michael, Jr., Tucson, for petitioners.

Sandra Day, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Davis, Eppstein & Hall by Philip Hall, David Bartlett, Tuscon, for respondent employee.

FELDMAN, Justice.

The question presented is whether a workers' compensation claim may be reopened to permit payment for medical care necessary to treat the sequelae of an industrial injury where the continuation of symptoms and developments in medicine have created a change in the medical needs of the injured worker, even though there has been no change in his physical condition.

Donald D. Appleton (claimant) was originally injured at work in January, 1975. His claim was last closed in August, 1981, with a 25% impairment of the right leg; no recommendation for surgery was made at that time. Continuing symptoms caused claimant to consult two of his previous physicians, both of whom recommended further surgery. Based on their assessment, claimant petitioned to reopen. The administrative law judge (ALJ) granted the petition. By memorandum decision the court of appeals set aside the award. *Stainless Specialty Manufacturing Com-*

*pany v. Industrial Commission*, (1 CA–IC 2997, filed February 7, 1984). Claimant then petitioned this court for review. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5, and Rule 23, Ariz.R.Civ.App.P., 17A A.R.S. We granted review to reexamine our previous decisions regarding the grounds for reopening. Rule 23(c)(4), *supra.*

### FACTS

Claimant tore the medial meniscus (cartilage) of his right knee at work on January 7, 1975. Charles Fina, M.D., an orthopedic surgeon, performed a medial meniscectomy (removal of cartilage on inner side of knee) in February, 1975, noting significant preexisting degenerative arthritis at that time. The industrial claim covering this injury was closed November 7, 1975, with a 15% impairment of the right leg. The claim was reopened and closed several more times before the reopening which is the subject of this petition. Edward C. Percy, M.D., also an orthopedic surgeon, performed two additional surgeries. The first, performed in April, 1978, was a partial synovectomy (removal of membrane within the knee joint), with removal of synovial plaque and patellar shaving (to remove uneven surface of bone). Then, in November, 1979, Dr. Percy performed remedial surgery (an Elmsley Trio procedure). Attached to the subsequent notice of claim status dated August 26, 1981 was Dr. Percy's closing report, stating:

I feel that [patient] should ... transfer his care to another doctor. I feel that I have been involved in this case now for over 3 years, feel that we have reached an end point as far as my treatment is concerned. I do feel that a fresh opinion on this might be to the [patient's] advantage. As *to whether or not [more] knee surgery is required, I think this would depend on the surgeon who takes over his care.* Frankly, at this stage I would not condone further surgery.... It is my opinion that this man has had repeated insults to his knee from injuries which were the result of industrial accidents.... When I saw him 3/79, I as-

sessed 25% for functional loss of the [right] lower extremity....

As stated above, *at that stage I do not feel that further surgery is indicated. It may be, however, that somewhere along the line in the future surgery will be contemplated. At this stage I would suggest that his case be reconsidered with surgery in mind but not until that time.* (Emphasis supplied.)

The claim was then closed by award dated August 11, 1981, with a 25% impairment of the right leg.

In March of 1982, persistent symptoms caused claimant to consult with Melvin Roberts, M.D., an orthopedic surgeon who had previously seen him regarding his knee. Claimant was complaining of bilateral knee pain that was worse on the right than on the left side. Dr. Roberts noted that claimant had developed varus deformities (knock knee or inward turning), osteophytes (bone growths), sclerosis (tissue death) and joint space narrowing. He also stated that claimant was a candidate for a high tibial osteotomy (removal of bone from upper portion of the tibia). Claimant then returned to Dr. Fina, who had performed the initial surgery, but had not seen claimant for his knee since October, 1975. On April 14, 1982, Dr. Fina diagnosed osteoarthritis of the right knee with a gross genu varum and recommended arthroscopy (a diagnostic and remedial surgical procedure). After seeing Dr. Fina, claimant filed a petition to reopen the 1981 award. When this was denied by notice of claim status dated May 12, 1982, claimant requested a hearing.

In June, 1982, Dr. Fina performed the arthroscopic procedure which included a limited debridement of the knee, arthroplasty (joint restoration) and a proximal valgus tibial osteotomy (bone removal to permit the tibia to turn outward). In his petition to reopen, claimant seeks payment of medical expenses and wage benefits during the period of recuperation. He has not made a claim for increase in the award for loss of earning capacity. Hearings on the

petition to reopen were held in October and November of 1982. Before the first scheduled hearing, claimant underwent an independent medical examination at the request of the State Compensation Fund. Robert Levitin, M.D., a specialist in occupational medicine, examined claimant and concluded that there had been no change in claimant's knee condition between the date of the last closing and the petition to reopen. However, Dr. Levitin stated that the surgery performed by Dr. Fina was a procedure to try to "correct and help to control so [claimant] would have less pain," and that "the degenerative process ... was ongoing." Dr. Levitin *did not* state that the surgery performed by Dr. Fina was medically inappropriate.

Dr. Fina testified that the claimant had osteoarthritis with bowlegged deformity caused, in part, by the 1975 industrial injury. In his opinion, claimant's condition had warranted surgery even in August, 1981, although he acknowledged that Dr. Percy had not considered surgery to be appropriate at that time. Dr. Fina attributed this difference of opinion to the fact that:

> Dr. Percy doesn't have the capacity to do what I do, and as far as I know he still can't do it, so I think that his opinion was based on what he, you know, as a clinician does.... I am still one of the very few people around that will do an abrasion arthroplasty and valgus tibial osteotomy, particularly the way [claimant] had one.

Dr. Fina also testified that, when seen by him in 1982, claimant needed surgery.

The administrative law judge found an "evolution of medical opinion," from Dr. Percy's anticipation (in August, 1981) of the possibility that additional surgery might be recommended in the future, to Dr. Fina's opinion that claimant needed that surgery in April, 1982. The relevant finding of the administrative law judge is:

> 10. Where past medical opinion regarding possible future treatment of an applicant evolves from a tentative impression ("... that somewhere along the line in the future surgery will be contem-

plated") to a present definite conclusion ("That when I saw him in April, 1982 he was in need of active medical treatment consisting of surgery") reopening is justified. To hold otherwise would not only deny the applicant benefits to which he is entitled, but also those who have their cases closed after initially refusing surgery and subsequently reconsidered as well as future follow up procedures such as plates and pins [cite omitted].

The ALJ made an award reopening the claim. On administrative review, the award was affirmed as fully supported by the evidence. The employer and carrier sought review by special action to the court of appeals. *See* A.R.S. § 23–951. The court of appeals set aside the award in a memorandum opinion. Claimant petitions for review of that decision by this court.

## NATURE OF THE REOPENING PROCEDURE

■■■ The reopening provision of Arizona's Workers' Compensation Act provides in part:

> An employee may reopen his claim to secure an increase or rearrangement of compensation or additional benefits by filing with the commission a petition requesting the reopening of his claim *upon the basis of new, additional or previously undiscovered temporary or permanent condition....*

A.R.S. § 23–1061(H) (emphasis added). The vehicle of reopening is designed to mitigate the harsh consequences of general *res judicata* principles, which would preclude any reexamination of an applicant's claim once it has been litigated and finally closed. *Pascucci v. Industrial Commission*, 126 Ariz. 442, 616 P.2d 902 (App. 1980); *Garrote v. Industrial Commission*, 121 Ariz. 223, 589 P.2d 466 (App.1978). In the workers' compensation setting, the doctrine of *res judicata* operates to bar relitigation of those issues which were determined in the previous proceedings as well as those which could have been decided at the time of the original award. *Noble v. Industrial Commission*, 140 Ariz. 571, 683

**16**

P.2d 1173 (App.1984). However, there is a basic difference in the application of *res judicata* principles in ordinary proceedings and in workers' compensation cases. This difference is reflected in the reopening provisions. *Pascucci v. Industrial Commission*, 126 Ariz. at 444, 616 P.2d at 904. There are no comparable provisions in ordinary civil law to correct prior omissions and update judgments.[1] Further, while rules in ordinary civil cases permit a party to recover damages based on the possibility or probability of the need for future treatment, there is no provision in workers' compensation cases to allow a present award of benefits for treatment which may become necessary in the future. In the workers' compensation setting, the injured worker cannot, for instance, show a probability of the need for future surgery and ask for an appropriate award of benefits to defray the expense. Instead, he must await the immediacy of the need and then apply for benefits; hence, the need for a reopening process. The reopening provision is a

> recognition of the obvious fact that, no matter how competent a commission's diagnosis of claimant's condition and earning prospects at the time of hearing may be, that condition may later change markedly for the worse, or may improve, or may even clear up altogether.... [T]he objectives of the legislation are best accomplished if the commission can increase, decrease, revive, or terminate payments to correspond to claimant's changed condition.

3 A. Larson, *The Law of Workers' Compensation* § 81.10 at 15–528 (1983). In an early discussion of the operation of *res judicata* in the workers' compensation setting, this court stated that *res judicata* serves to conclude only those questions "existing and known" at the time of the award, and stated further:

> But it is common knowledge that the results of physical injuries are often not determinable at the time they are received, and to require that they be then

stated is to demand the performance of the impossible.

*Zagar v. Industrial Commission*, 40 Ariz. 479, 486–87, 14 P.2d 472, 474 (1932). As Larson points out

> Indeed, ... one of the main advantages of the reopening device [is] that it permits a commission to make the best estimate of disability it can at the time of the original award, although at that moment it may be impossible to predict the extent of future disability, without having to worry about being forever bound by the first appraisal [footnotes omitted].

3 A. Larson, *supra*, § 81.31(a) at 15–554.-16–554.18.

In construing the statute, we note that we have consistently recognized the remedial purpose of the compensation law, holding that its provisions should be construed liberally so as to effectuate the purposes of the act. *Cook v. Industrial Commission*, 133 Ariz. 310, 311, 651 P.2d 365, 366 (1982); *Pascucci v. Industrial Commission*, 126 Ariz. at 444, 616 P.2d at 904; *English v. Industrial Commission*, 73 Ariz. 86, 89, 237 P.2d 815, 817 (1951). Given this need for statutory interpretation which will effectuate the remedial purposes of a no-fault compensation system, and awareness of the perverse effect of strict application of *res judicata* principles in a workers' compensation setting, we move to an analysis of reopening requirements.

### THE CHANGE IN CONDITION REQUIREMENT

■ The claimant seeking to reopen under A.R.S. § 23–1061(H) has the burden of showing the presence of one of the three statutory factors: new, additional or previously undiscovered *condition*. The issue here is whether claimant bore this burden. The administrative law judge found no change in physical condition but ruled that an evolution of medical opinion (from Dr. Percy's anticipation of a possible need for surgery sometime in the future to Dr. Fina's later opinion that claimant was in

---

1. We omit consideration of equitable proceedings, such as injunctions, where the court retains continuing jurisdiction. *See, e.g.,* Rule 65, Ariz.R.Civ.P., 16 A.R.S.; *see also* Rule 60(c), *id.*

need of that treatment) justified reopening. Of course, "evolution" is a "change." The court of appeals correctly held, however, that there was no authority for the proposition that evolution of medical opinion after a case is closed will justify reopening (slip op. at 8, citing *Bill Breck Dodge v. Industrial Commission*, 138 Ariz. 388, 390, 675 P.2d 275, 277 (1983)). In *Bill Breck Dodge*, a majority of this court held that the availability of new surgical or medical treatment was not a new "condition"; however, it affirmed the reopening award on the ground that increased pain, which makes new or additional medical treatment appropriate, is a change in physical condition that is sufficient to permit reopening.

We now deal with a variation of the reopening theme. Here, unlike in *Bill Breck Dodge*, reopening is not based upon a subjective perception of change in pain level,[2] but rather upon a change in medical procedures recommended to treat the same physical condition, *where the possibility of such future need was explicitly foreseen at the time of closing*. Thus, we are faced with the simple issue of whether reopening can be justified by evidence of a change in the medical treatment needed for the same physical condition which existed at the time of closing. *Bill Breck Dodge* answers the question in the negative. The facts of this case illustrate that adherence to the holding that injured workers may not obtain medical and other benefits for medical treatment which first becomes necessary or appropriate after the case has been closed is directly contrary to the spirit of the Workers' Compensation Act. The need for liberal reopening standards was compellingly described in *Zagar v. Industrial Commission*:

> The Workmen's Compensation Law does not specifically confer on the commission a continuing power over its awards, as is

the case in compensation laws generally, but we think such power is impliedly conferred.... Without a continuing power to alter, amend, or rescind its awards ... the commission would certainly be greatly hampered in its efforts to carry out the spirit of the law and to do justice between the parties.... The spirit of the act is that every employee injured ... shall be indemnified.... To effectuate this wholly laudable and desirable end, the commission *must possess* and exercise a continuing power to alter, amend, or rescind the award if the facts justify it.

40 Ariz. at 487–88, 14 P.2d at 475 (emphasis added).

Professor Larson acknowledges that, from a theoretical standpoint, commissions should exercise perpetual and unlimited jurisdiction to reopen in order "to make benefits meet current conditions." 3 A. Larson, *supra*, § 81.10 at 15–528. Thus, as Larson points out, the theory of *res judicata* does not serve the purposes of the workers' compensation system and is necessary in that system only because of the technical and administrative problems created by unlimited continuing jurisdiction. These administrative problems require some limitation on the power to open and modify awards. *Id; see also* Note, *Res Judicata and Reopening Workers' Compensation Claims in Arizona*, 23 Ariz.L. Rev. 1103, 1109–10 (1981). The reopening problem is therefore simply a question of drawing a line which will permit effectuation of the remedial purpose of the statute while at the same time permitting the application of the rule of *res judicata* at a point where the system may function administratively and insurers may estimate reserve requirements.

In addition to these administrative concerns, we note that, from the standpoint of

---

**2.** There was conflicting evidence on whether claimant had experienced greater pain since the date of closing. Claimant testified that he had, and the employer and carrier offered surveillance films as impeaching evidence in an attempt to destroy claimant's credibility on that issue. Dr. Fina's conclusion that surgery was warranted in 1982 was not based upon claim-

ant's reports of *increased* pain but rather upon the persistence of symptoms and the natural osteoarthritic deterioration of the knee. So far as the record indicates, there is no dispute on either of these two points. The award was not based upon a change in pain level, but upon an "evolution" in medical opinion.

statutory construction, A.R.S. § 23–1061(H) permits reopening for a new, additional or previously undiscovered "condition." It does not exclude changes in "medical condition" nor require that the change be in a "physical condition." Thus, as used in the statute, "condition" could be interpreted to mean any attendant circumstance. This would alter the interpretive emphasis from changes in physical condition to the true question in all *res judicata* problems in compensation cases, *viz:* was the issue raised one which either was litigated or could have been litigated prior to closing? *Zagar,* 40 Ariz. at 486–87, 14 P.2d at 474.

In this connection, it is also necessary to consider the rearrangement statute which permits adjustment of the final award for lost earning capacity as the result of permanent, partial disability for work. A.R.S. § 23–1044(C) requires that an employee whose earning capacity has been reduced receives a benefit equivalent to 55% of the lost earning capacity. The statute then provides:

> F. For the purposes of subsection C of this section, the commission shall, ... when the physical condition of the injured employee becomes stationary, determine the amount which represents the reduced monthly earning capacity, ... make an award of compensation *which shall be subject to change in any of the following events:*
>
> 1. Upon a showing of a *change in the physical condition* of the workman subsequent to such findings and award arising out of the injury resulting in the reduction or increase of his earning capacity.
>
> 2. Upon a showing of a reduction in the earning capacity of the workman arising out of such injury where there is no change *in his physical condition,* subsequent to the findings and award.
>
> 3. Upon a showing that his earning capacity has increased subsequent to such findings and award.

A.R.S. § 23–1044(F) (emphasis supplied).

■ This statute once permitted rearrangement of final awards for compensation only on a change in physical condition. That restriction was held unconstitutional in *Adkins v. Industrial Commission,* 95 Ariz. 239, 389 P.2d 118 (1964). The constitutional requirements were explained in *Adkins* (*id.* at 245–46, 389 P.2d at 121–22) and are now contained in parts 1, 2 and 3 of § 23–1044(F). Thus, the commission retains jurisdiction to rearrange final awards of compensation for lost earning capacity if the claimant shows any change, physical or otherwise, which affects earning capacity and which is attributable to the industrial injury. *Gallegos v. Industrial Commission,* 144 Ariz. 1, 695 P.2d 250 (1985).

The present rule on reopening restricts the commission's power to provide for medical treatment based on new techniques or discoveries because it does not allow reopening to permit use of a new medical discovery to treat a static physical condition, even though the new procedure or drug might completely rehabilitate the worker and remove him from the compensation rolls. It is strange, indeed, to allow a claimant to increase his compensation for lost earning capacity by showing that continued symptoms have made it impossible for him to continue with his work, but prevent him from reopening under § 23–1061(H) to obtain medical benefits necessary to pay for treatment which might enable him to continue work, obviate the need to increase his compensation or even permit reduction.

■ Such a rule is directly contrary to the remedial purpose and spirit of the constitutional mandate in article 18, § 8. Assuming, as we must, that the legislature intended that the reopening statute conform to the spirit and mandate of the constitution (*see Zagar v. Industrial Commission, supra*), we conclude that we must recede from our previous, strict interpretation of the statute. We hold, therefore, that reopening is permissible when a change in physical circumstances or medical evaluation creates a need for treatment,

and the legitimacy of that need was not and could not have been adjudicated at the time of the last award.

 We do not hold that different medical opinion will justify reopening a claim. We adhere to "the general rule that the claimant is not entitled to relitigate those matters upon which he was free to introduce evidence in a prior proceeding, even if additional evidence is later available." Note, *supra*, at 1110; *Lauderdale v. Industrial Commission*, 60 Ariz. 443, 139 P.2d 449 (1943). Thus, if new evidence is found to controvert that produced at the hearing or if a doctor changes his mind, reopening would be an attempt to relitigate issues which were or could have been litigated, and will not be allowed under principles of *res judicata*.[3] However, where there is evidence that the circumstances have changed since closing, because of a difference either in the claimant's physical condition or in the medical procedures necessary to treat that condition, reopening will be supported. If, for instance, a new medical treatment has evolved which will permit complete rehabilitation of the worker, reopening is proper even though the claimant's physical condition has not changed. If the condition is unchanged but the continued symptoms make treatment appropriate where it was not before, reopening should be permitted. We believe that such a rule interprets the statute in accordance with constitutional requirements, the spirit and construction of the Workers' Compensation Act as a whole, the need to encourage rehabilitation, and plain common sense. We emphasize, however, that our ruling today is not broad. Evidence of *change* in physical condition or medical needs is still a prerequisite of reopening for a new or additional condition. The causal connection with the industrial injury must still be shown. We simply no longer construe the word "condition" as used in A.R.S. § 23–1061(H) to mean physical condition alone.

We now turn to the facts of the case at bench. The evidence supports the administrative law judge's finding that the need for surgery was foreseen as possibly appropriate in the future and that circumstances evolved so that it was actually recommended at the time of the petition to reopen. At the time of closing in 1981, the issue whether claimant would need surgery in 1982 was not litigated and, under these facts, could not have been litigated. When the necessity of further surgery arose, there was a change in circumstance which satisfies the statutory requirement of a "new or additional condition." Uncontroverted evidence presented at the hearing established that the surgery performed on claimant was recommended and appropriate at that time.[4]

 An additional showing necessary to reopen a claim under A.R.S. § 23–1061(H) is a causal connection between the new or additional treatment and the industrial injury. Dr. Fina testified unequivocally that the June, 1982 surgery was "directly, causally related" to the industrial injury. There was contrary evidence from Dr. Levitin. Unless a causal connection is clearly apparent to a lay person, the relationship must be established by expert medical testimony. *Makinson v. Industrial Commission*, 134 Ariz. 246, 248, 655 P.2d 366, 368 (App.1982). Where there is a conflict in expert testimony, it is the responsibility of the administrative law judge to resolve it. *Ortega v. Industrial Commission*, 121 Ariz. 554, 557, 592 P.2d 388, 391 (App.1979). In the case at bench, the administrative law judge resolved the conflict on causation by adopting Dr. Fina's opinion as more probably correct. We will not disturb the resolution of the administrative law judge unless it is wholly unrea-

---

3. Of course, if the change in testimony involves a "previously undiscovered" condition, A.R.S. § 23–1061(H) would be applicable.

4. Dr. Levitin explained that Dr. Percy had not recommended surgery in 1981 but had foreseen that surgery might be necessary later. Dr. Levi-

tin also testified that the surgery Dr. Fina performed in 1982 was that which, in 1981, Dr. Percy had contemplated might become appropriate "in the future." With qualifications, Dr. Fina agreed with this assessment.

sonable. *Id.* We conclude, therefore, that reopening was legally proper, and turn to the evidentiary issues.

The reopening award made by the administrative law judge was not based upon a finding of increase in pain as a "new or additional" condition, but upon the "evolution of medical opinion" as such a condition. The record, though convoluted, supports the finding that there was an "evolution of medical opinion" which resulted in surgery becoming appropriate. There also was testimony to support the conclusion that claimant's physical condition had deteriorated. However, the "evolution" theory adopted by the administrative law judge did not require him to believe claimant's testimony on this issue, and he did not make any findings based on claimant's credibility. Accordingly, we need not reach the issues of whether the record supports reopening based on increase in subjective pain or whether there was error in excluding impeachment evidence bearing upon plaintiff's credibility in reporting his increase in symptoms.

The award is affirmed; the memorandum decision of the court of appeals is vacated.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice, dissenting:

A little over a year ago this court decided in *Bill Breck Dodge vs. Industrial Commission of Arizona*, 138 Ariz. 388, 675 P.2d 275 (1983), that a change in medical procedure was not a change of condition which authorized reopening of a workman's compensation claim. I believe that the case was correctly decided and nothing in the majority opinion has convinced me otherwise. Therefore, I dissent from the decision of the majority and I would affirm the decision of the Court of Appeals.