NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ROYAL L. BENNETT, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent.*

FEDERAL EXPRESS CORPORATION\*,\*\*, *Respondent Employer.*

FEDERAL EXPRESS CORPORATION\*,\*\*, *Respondent Carrier.*

No. 1 CA-IC 15-0080
FILED 6-2-2016

Special Action - Industrial Commission
No.  20131490219\*, 20143110114\*\*
The Honorable Jonathan Hauer, Administrative Law Judge

**AFFIRMED**

COUNSEL

Royal Bennett, Peoria
*Petitioner in propria persona*

Jardine, Baker, Hickman, Houston, Phoenix
By Stephen M. Venezia
*Counsel for Defendant/Appellee Employee and Carrier*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Peter B. Swann joined.

---

**T H O M P S O N**, Judge:

¶1        This is a special action review of an Industrial Commission of Arizona consolidated award and decision upon review 1) denying petitioner Royal L. Bennett's (Bennett) petition to reopen his May 2013 ankle injury claim and 2) determining that he was medically stationary without permanent impairment after he sustained a second ankle injury in April 2014.  Because the evidence supports the administrative law judge's (ALJ) award, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Bennett worked as a courier for Federal Express.  His job duties included lifting and delivery packages weighing between 75 and 150 pounds.  On May 11, 2013, Bennett injured his right ankle while stepping out of his delivery vehicle.  As Bennett stepped out of the vehicle and placed his right foot down, "it twisted . . . inwards, hurting [his] ankle and below [his] inner lower ankle."  Bennett reported the injury to his manager but continued to work.  When he continued to have ankle pain, he filed a workers' compensation claim and went to the doctor, who prescribed physical therapy.  Physical therapy and an ankle brace helped but did not completely alleviate Bennett's ankle pain.  On May 28, 2013, the doctor released Bennett back to full-time work without restrictions and his claim was closed.  Bennett had suffered from pain in both feet and ankles and sought treatment prior to the 2013 injury.

¶3        On April 12, 2014, Bennett again injured his right ankle while stepping out of his vehicle.  When Bennett put his right foot down his ankle rolled outwards and he experienced pain on both sides of the ankle and a shooting leg pain.  He finished his deliveries and informed a supervisor that he had twisted his ankle.  Bennett went back to work with an ankle brace. His ankle pain persisted, and he went to see orthopedic surgeon Dr. Melissa Galli in July 2014.   After examining Bennett, Dr. Galli found that he had ankle instability, pain along the medial aspect and the anterior aspect of his right ankle, effusion of the right ankle, bilateral foot pain, and bilateral

fallen arches. Dr. Galli ordered an MRI, which revealed an endstage osteochondral lesion of the medial aspect of the talus measuring 8 by 13 millimeters and a subchondral depression.[1] The MRI further revealed thickening of fibers and irritation along the deep deltoid ligament and irritation along the posterior tibial tendon. Dr. Galli performed surgery on Bennett's right ankle in December 2014.[2]

¶4 At the hearing Dr. Galli initially related Bennett's need for ankle surgery to his 2013 and 2014 industrial injuries, but on cross-examination she could not express an opinion as to the 2013 injury. As to the 2014 injury, Dr. Galli testified that the edema she found within Bennett's deep deltoid ligament was more commonly associated with a sprain, rather than a chronic injury, although she could not rule out the possibility it was caused by a chronic condition. Dr. Galli opined that Bennett's 2014 ankle sprain contributed to his osteochondral lesion because "it's not common to see this big of a defect in somebody who is flatfoot alone."

¶5 Dr. Ronald M. Lampert, also an orthopedic surgeon, examined Bennett in October 2014. Dr. Lampert opined that Bennett's need for surgery was unrelated to either the 2013 or 2014 injury. Dr. Lampert testified that when he examined Bennett in October 2014, he was medically stationary and without permanent impairment.

¶6 After the hearing, the ALJ found that there was insufficient evidence to prove Bennett had any new, additional or previously undiscovered conditions that were causally related to the 2013 industrial injury. The ALJ denied Bennett's request to reopen. The ALJ found that Bennett's 2014 injury was compensable, noting that both Drs. Galli and Lampert agreed that Bennett sustained some form of ankle injury on April 2014. The ALJ found that Bennett's April 2014 ankle injury became medically stationary on October 15, 2014 without permanent impairment and without the need for surgical intervention, supportive care, or work

---

[1] Dr. Galli described an osteochondral lesion as being a nick to the cartilage.

[2] Dr. Galli performed surgery for endstage osteochondral defects with underlying subchondral bone collapse. The surgery involved removing cystic bone and replacing it with cadaveric bone, resurfacing the bone, and repairing ligaments. According to Dr. Galli, surgery was necessary because "when you see a cartilage lesion with this much subchondral bone irritation to it [it is time] to start surgical intervention because there's really not good bracing solutions. . . ." Dr. Galli further explained that physical therapy does not help with subchondral issues.

restrictions, after accepting the opinions and conclusions of Dr. Lambert as more probably correct. The ALJ awarded Bennett medical, surgical and hospital benefits arising out of the April 2014 injury, from the date of the injury until October 15, 2014. Additionally, the ALJ awarded Bennett temporary total or temporary partial disability compensation benefits arising out of the April 12, 2014 injury until October 15, 2014.

¶7     Bennett filed a pro per request for review in which he asked the ALJ for an extension of time to get a second opinion. (request for review). The ALJ summarily affirmed the consolidated decision and denied the request for extension of time. Bennett timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(2) (2003), 23-951(A) (2012), and Arizona Rules of Procedure for Special Actions 10.[3]

## DISCUSSION

¶8          In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

¶9          Bennett argues that 1) he told Dr. Lampert in confidence that he had developed flat feet after nineteen years of working for Federal Express and Dr. Lampert used the information against him when he concluded Bennett had a preexisting condition, 2) Dr. Lampert did not listen to him and made "false statements and false findings," 3) Dr. Lampert's written report indicates the date of injury was April 18, 2014 instead of April 12, 2014, 4) previous x-rays and supporting medical documents were not in evidence and would "adequately attribute to [a] compensable condition to the respective date of injury," and 5) the medical records reveal "no other explanation for how OCL developed in [his] ankle except for the injury that occurred in April 2014."

¶10          At the outset, we note that Bennett's opening brief (entitled "Opening Statement") fails to comply with the Arizona Rules of Civil

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

Appellate Procedure.[4] Arizona Rule of Civil Appellate Procedure (ARCAP) 13(a)(5) requires "[a] statement of facts relevant to the issues presented for review, with appropriate references to the record." Rule 13(a)(6) requires "[a] statement of the issues presented for review." Rule 13(a)(7) requires an argument section containing the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the legal authorities and parts of the record relied on. Bennett's opening brief fails to provide a statement of facts or an issue statement. Nor does it contain citations to the record or authorities. The opening brief fails to even minimally comply with ARCAP 13. We may dismiss the appeal for this reason. *See Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 342-43, 678 P.2d 525, 527-28 (App. 1984). However, to the extent that Bennett argues that the ALJ erred by relying on the opinions of Dr. Lampert in denying his petition to reopen the 2013 claim and in finding that the 2014 claim was medically stationary with no permanent impairment, we find no error.

### A. Petition to Reopen the 2013 Claim

**¶11**        A claimant seeking to reopen an industrial claim has the burden of proving a "new, additional or previously undiscovered temporary or permanent condition," as well as a causal relationship between the new disability and the prior industrial injury. A.R.S. § 23-1061(H); *Sneed v. Industrial Comm'n*, 124 Ariz. 357, 359, 604 P.2d 621, 523 (1980). Unless a causal connection is clearly apparent to a lay person, the causal connection must be established by expert medical testimony. *Makinson v. Indus. Comm'n*, 134 Ariz. 246, 248, 655 P.2d 366, 368 (App. 1982).

**¶12**        Dr. Galli initially concluded that Bennett needed surgery in December 2014 due in part to his 2013 injury. She then testified, however, that she "[could] not make a statement [as to the 2013 injury]" because Bennett "was not under [her] care in direct relation to anything that happened in 2013."

**¶13**        Dr. Lampert testified that as of October 2014 when he examined Bennett, there were no new, additional, or previously undiscovered conditions related to the 2013 injury, and that Bennett's need for surgery had nothing to do with the 2013 injury. Instead, Dr. Lampert opined that Bennett's need for surgery was related to his preexisting conditions: flat footedness and the osteochondral lesion.

---

[4] We hold pro per litigants to the to the same standard as attorneys. *Higgins v. Higgins*, 194 Ariz. 266, 270, ¶ 12, 981 P.2d 134, 138 (App. 1999).

¶14   Bennett failed to meet his burden of proving a new disability related to the 2013 injury. Because Bennett did not submit sufficient evidence to support the reopening, we affirm.

## B. The 2014 Award

¶15   The ALJ concluded that Bennett sustained a compensable injury in April 2014. However, the ALJ adopted the opinions and conclusions of Dr. Lambert as more probably correct, and found that Bennett's April 2014 injury became medically stationary on October 15, 2014, without permanent impairment and without the need for surgical intervention, supportive care, or work restrictions.

¶16   Dr. Lambert testified that Bennett's need for surgery was unrelated to the 2014 injury. According to Dr. Lambert, the mechanism of injury as explained by Bennett during the October 2014 examination was inconsistent with Bennett's need for surgery:

> [Dr. Lampert]: The 2014 injury was described as turning the foot inward, and [Bennett] having pain after . . . on the outer side, which is consistent with that type of mechanism and is the most common way to sprain an ankle. The deltoid ligament, which subsequently was found to be thickened, is on the inner side and would not in any way have been injured with that type of twisting of the foot inwards.

Dr. Lambert further explained that Bennett's osteochondral lesion was not caused by the 2014 injury:

> You don't develop an osteochondral lesion with an episode. You may have a fracture type of injury where you fracture the lateral malleolus or you fracture the talus. This isn't a fracture. This is an entity whereby continued trauma over a period of many months has sort of pounded on this area and caused it to break down.

Dr. Lambert testified that a May 2013 x-ray showed that the osteochondral lesion that had been developing for "many months" at that point.

¶17 Although Dr. Galli agreed that Bennett had an "endstage" pre-existing osteochondral lesion, she testified that the edema she found within Bennett's deep deltoid was more commonly associated with a sprain, rather than a chronic injury, and she opined that Bennett's 2014 ankle sprain contributed to his osteochondral lesion because of the size of the lesion. In contrast with Dr. Lambert's opinion, she believed that Bennett's pathology was consistent with how he said he was injured in 2014.

¶18 It is the ALJ's duty, as the trier of fact, to resolve all conflicts in the evidence and to draw all warranted inferences. *Malinski v. Indus. Comm'n,* 103 Ariz. 213, 217, 439 P.2d 485, 489 (1968). When more than one inference may be drawn from the evidence, the ALJ may choose either; this court will not disturb the ALJ's decision unless it is wholly unreasonable. *Id.* When there is a conflict in expert medical testimony, it is the responsibility of the ALJ to resolve it. *Stainless Spec. Mfg. Co v. Indus. Comm'n of Ariz.*, 144 Ariz. 12, 19, 695 P.2d 261, 268 (1985). Here, the ALJ resolved the medical conflict by accepting the opinions of Dr. Lambert as more probably correct and that decision was based on reasonable evidence. Accordingly, we affirm the decision of the ALJ.

## CONCLUSION

¶19 For the foregoing reasons, we affirm the ALJ's consolidated decision upon hearing and findings and award denying reopening and for compensable claim and the decision upon review.



Ruth A. Willingham · Clerk of the Court
FILED: AA

7