675 P.2d 282

Charline C. TARPY, Petitioner,

v.

The **INDUSTRIAL COMMISSION OF ARIZONA**, Respondent,

**Arizona State Prison, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

No. 1 CA–IC 2815.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 30, 1983.

Dee-Dee Samet, P.C. by Dee-Dee Samet, Tucson, for petitioner.

James Overholt, Chief Counsel Industrial Commission of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel State Compensation Fund, Phoenix by James F. Crane, Tucson, for respondent employer and respondent carrier.

OPINION

JACOBSON, Chief Judge.

This review of an award of the Industrial Commission requires a determination of whether subjective pain, without change in objective physical findings which, in the opinion of medical experts, requires active medical treatment is sufficient basis to re-open a previously closed industrial claim.

The facts in this case are surprisingly free from material dispute and the sole issue is the legal significance of the facts in the arena of reopening.

The claimant, Charline C. Tarpy, was originally injured while employed as a corrections officer for the Arizona State Prison. The injury consisted of a cervical sprain which caused cervical pain. The claim was accepted for benefits and was closed on or about March 16, 1981 upon the advice of her treating physician, Dr. John F. Manfredonia, D.O., that her condition

was stationary and no further medical treatment was necessary.

Following her discharge, claimant saw Dr. Manfredonia informally and complained of continuing pain in her neck but sought no formal medical treatment. In August, 1981, the claimant twisted her neck while driving an automobile and her symptoms of pain increased.

After the automobile incident, the claimant was examined by Dr. Bruce Bingham, M.D., on August 20, 1981, who found that she had full range of motion of the cervical spine and the shoulders were within normal muscle strength. While the neurological examination was normal, slight tenderness in the cervical spine and right scapula was noted. Dr. Bingham advised further treatment, but the claimant did not return. Although Dr. Bingham related the claimant's complaint to her original industrial injury, because she did not return for follow-up treatment he was unable to give an opinion as to the extent or duration of further medical care.

On August 24, 1981, the claimant filed a petition to reopen the previously closed industrial claim which petition was denied by the carrier. This denial was timely protested and hearings ensued.

At the hearing, the dispositive factual issues were presented by Dr. Manfredonia, Dr. Bingham, Dr. Roger T. Grimes, D.O., and the claimant. Basically, the claimant's testimony was that following the initial injury she felt better under the treatment by Dr. Manfredonia, but that following the closing of her case, the pain symptoms increased, that she continued to work, but called in unable to work four or five times because of the pain in her neck, and that she had not continued active medical treatment because she could not afford it.

Dr. Manfredonia, because he had not professionally examined the claimant since the original closure, was unable to give an opinion as to her present condition. Dr. Bingham testified basically in accordance with his previous diagnosis of August 20, 1981, but did opine that any increase in pain was causally related to the prior industrial injury.

Dr. Grimes testified that he examined the claimant in January, 1981 and again in March, 1982 and that the only objective finding he made at the last examination was tenderness to palpitation in the dorsal spine. He was, however, of the opinion that the claimant was presently in need of active medical treatment (physical therapy, manipulation and cervical spine exercises). Dr. Grimes further testified that the claimant suffered no new or previously undiscovered conditions, but that she did have additional increase in pain. As Dr. Grimes stated:

Q: The only additional thing you could find since the closure of the case was the subjective complaints; is that correct?

A: Subjective increase in complaints, right.

Dr. Grimes related this increase in subjective pain to the original industrial injury.

The administrative law judge found that in fact the claimant had an increase in subjective pain and that this increase in pain was subject to active medical treatment, but found that no competent evidence indicated that this pain produced an earning capacity disability. Based upon the finding of no increase in earning capacity disability and relying on this court's decision in *United States Fidelity & Guaranty Co. v. Industrial Commission,* 117 Ariz. 480, 573 P.2d 880 (App.1977), the administrative law judge denied reopening. The claimant has timely sought review of that award in this court.

A reopening of a previously closed claim is authorized by A.R.S. § 23–1061(H), (Supp.1982), which provides in pertinent part:

An employee may reopen his claim to secure ... additional benefits by filing with the commission a petition requesting the reopening of his claim upon the basis of new, additional or previously undiscovered temporary or permanent condition ....

Because of the posture of this case, we must determine whether an increase in subjective pain without corresponding objective changes, but which requires active medical treatment, is an "additional ... condition" which would allow reopening. As correctly pointed out by the administrative law judge, the case of *United States Fidelity & Guaranty v. Industrial Commission*, 117 Ariz. 480, 573 P.2d 880 (App. 1977), touched upon this issue. In *United States Fidelity & Guaranty*, we held, rather broadly, that:

Since pain, in and of itself, is a non-compensable element of an injury in the first instance, it follows that pain, in and of itself, cannot be a 'new, additional or previously undiscovered condition' for the purpose of supporting a Petition to Reopen.... [I]t is only when the pain results in an earning capacity disability that reopening is available.

*Id.* at 482, 573 P.2d at 882.

For the reasons stated in *United States Fidelity & Guaranty*, we continue to adhere to its basic holding which is that "pain in and of itself," which does not result in the invocation of any right to benefits recognized under the Act, is insufficient to support a reopening. We also continue to adhere to the principle that if the increase in subjective pain results in an additional earning capacity disability, reopening is available.

However, insofar as *United States Fidelity & Guaranty Company* by its language would limit reopening to situations where pain resulted in additional earning capacity disability, the opinion goes too far.

A.R.S. § 23–1061(H) (Supp.1982) clearly allows reopening to secure "additional benefits." The benefits provided under the Workmen's Compensation Act consist not only of "compensation ... for loss sustained on account of the injury," that is, loss of earning benefits, either scheduled or unscheduled, but also "medical, nurse and hospital services and medicines." A.R.S. § 23–1021(B).

Since subjective pain which results in awarding additional earning benefits is sufficient to reopen, *Morrison-Knudsen Co., Inc., v. Industrial Commission*, 27 Ariz. App. 1, 550 P.2d 648 (1976), it logically follows that pain which results in securing any other benefits allowed under the act, should also be sufficient.[1]

We, therefore, hold that an increase in subjective pain, even though unaccompanied by a change in objective physical findings, which results in the procuring of medical benefits for active medical treatment is sufficient to justify a reopening under A.R.S. § 23–1061(H).

The award of the Commission is set aside.

BROOKS and OGG, JJ., concur.

---

1. We note that in *United States Guaranty & Fidelity Company,* no active medical treatment was indicated, but that "supportive care" was prescribed. In this case we are dealing with active medical treatment, that is, treatment for a non-stationary condition which will improve that condition. We do not determine whether "supportive care" under the circumstances presented here, would mandate reopening.