675 P.2d 275

**BILL BRECK DODGE, INC.,**
Petitioner Employer,

**Travelers Insurance Company,**
Petitioner Carrier,

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Edmond B. Johnson, Respondent**
Employee.

No. 16676–PR.

Supreme Court of Arizona,
In Banc.

Dec. 29, 1983.

Law Office of John F. Day, P.C. by John F. Day and Burch & Cracchiolo, P.A. by Steven L. Reed, Phoenix, for petitioner employer/carrier.

Rabinovitz & Dix, P.C. by Charles G. Rehling, II, Tucson, for respondent employee.

James A. Overholt, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

CAMERON, Justice.

We granted the petition of the respondent workman, Edmond B. Johnson, to review a memorandum decision of the Court of Appeals, which set aside an award of the Industrial Commission of Arizona allowing the reopening of Johnson's claim.

The facts necessary for a determination of this matter on appeal are as follows. On or about 3 October 1977, Johnson received a "stomach strain" from lifting objects in the course of his employment. He was seen by Dr. Robles, who reported to the Industrial Commission as follows:

17. COMPLAINTS AND PHYSICAL FINDINGS, IN DETAIL: The patient walks with a limp in [apparent] pain. Examination of the abdomen shows tenderness in the right inguinal area. The testicle is slightly swollen on the right and is also tender.

18. DIAGNOSIS:

Pain, anterior [abdominal] wall. Question of epididymitis.

The claim was accepted and benefits paid. The claim was closed without permanent disability. About a year later, in 1978, Johnson visited Dr. Gigax for problems related to the 3 October 1977 injury. On physical examination, Dr. Gigax noted that Johnson's right testicle was about two-thirds as large as the left testicle and it was slightly tender. Dr. Gigax noted a partial atrophy of the right testicle, "probably due to testicular injury in October, 1977." His notes also state:

Mr. Johnson came in today because he said his right testicle has gotten much smaller since his injury last year. I do note that at the time of the injury there was apparently some contusion of the testicle, according to Dr. Robles' note.

As a result of this examination, in September of 1978, Johnson sought to reopen the claim on the grounds of new, additional or previously undiscovered condition. The petition was denied, not protested, and be-

came final. On 22 October 1980, Johnson filed a second petition to reopen which was also denied. Johnson timely requested a rehearing, and hearings on the reopening petition were held in May and July of 1981.

At the hearings, John H. Gigax, M.D., Thomas Newman, M.D., and Charles P. Neumann, M.D., testified. Dr. Gigax testified that he examined Johnson in 1980, and that Johnson complained of pain and of sexual problems. Dr. Gigax did not note any change in testicular size from the examination in 1978, but for the first time indicated to Johnson that removal of the testicle might be of help. Dr. Gigax testified that Johnson complained of increasing pain. It was Dr. Gigax's opinion that increasing pain was inconsistent with Johnson's condition, although he admitted that Johnson probably had been experiencing some pain since 1977.

Dr. Newman also examined Johnson and testified that his diagnosis was:

1. Orchialgia—painful right testicle, secondary to [atrophic] right testicle.

2. Sexual impotence—possibly organic.

3. Depression.

4. Rule out ilioinguinal nerve entrapment.

Dr. Newman indicated that while he did not believe the testicle would continue to shrink, the pain might increase. Dr. Newman also suggested removal of the testicle.

Dr. Charles P. Neumann, a psychiatrist, testified and recommended psychological treatment to prepare for the testicle operation. He was unable to state that there was a new, additional condition which would relate to the 1977 injury.

Johnson took the stand and testified that his testicle had shrunk since 1977, and that his pain had increased. He testified that his sexual problems began shortly after the accident and before he saw Dr. Gigax.

The administrative law judge, after reciting the facts, found as follows:

11. The hearing supplied medical evidence of additional disability both of a physical and mental nature existing as a

result of the injury by industrial accident as related in detail by Dr. Newman and Dr. Neumann is sufficient grounds to reopen this claim, and in the instant action, evidence reveals that the applicant did have at the time he filed his reopening petition new, additional or previously undiscovered disability, referable to the industrial injury of October 3, 1977, which has not yet become stationary with further active medical care required.

Bill Breck and Travelers Insurance Company sought review by special action to the Court of Appeals. The Court of Appeals, in a memorandum decision, reversed the decision of the administrative law judge and set aside the award. We granted Johnson's petition for review.

After granting the petition for review, we, on our own motion, requested oral argument on two issues:

1. Whether a workman's compensation claim may be reopened on the ground that a surgical procedure or treatment has been offered which had not been presented or available at the time an earlier award became final.

2. Whether there was a change in claimant's condition justifying a reopening of the claim.

## NEW MEDICAL PROCEDURE

■ The workman's compensation statute states:

H. An employee may reopen his claim to secure an increase or rearrangement of compensation or additional benefits by filing with the commission a petition requesting the reopening of his claim upon the basis of new, additional or previously undiscovered temporary or permanent condition * * *.

A.R.S. § 23–1061(H). It may be that reopening a claim for a new surgical procedure could be of benefit to both the workman and the carrier, in that the workman's condition could be improved by surgery to the point that he would no longer be disabled and dependent on workman's compensation benefits. The statute, however, does not provide for a reopening based upon new surgical or medical treatment alone. Neither were we cited to any authority which holds otherwise. There must be, as the statute requires, a "new, additional or previously undiscovered temporary or permanent condition," and the availability of new medical or surgical treatment is not a new "condition." In the instant case, the fact that Johnson was offered surgery for the first time in 1980 was not a "new, additional or previously undiscovered" condition under the statute.

## CHANGE OF CONDITION

■ We next consider whether there was any new, additional or previously undiscovered condition in the instant case which would support a reopening of Johnson's claim. The general rule in Arizona is that an Industrial Commission decision will not be set aside if it is reasonably supported by the evidence. *Micucci v. Industrial Commission*, 108 Ariz. 194, 195, 494 P.2d 1324, 1325 (1972). An award will be affirmed if, considering the evidence in a light most favorable to sustaining the award, there is any reasonable basis in the record to support such award. *Perry v. Industrial Commission*, 112 Ariz. 397, 398–99, 542 P.2d 1096, 1097–98 (1975); *Malinski v. Industrial Commission*, 103 Ariz. 213, 216–17, 439 P.2d 485, 488–89 (1968). In the present case, one of the examining physicians testified that Johnson's increased pain stemmed from his 1977 injury. Dr. Gigax testified:

Q  Was your recommendation surgery in 1980 for Mr. Johnson's problems * * * as to the pain problem?

A  Again, I just—just as I said before, you know, it's a question of how much is this pain bothering you. If it's bothering you to the point where you can't tolerate it, then you should have your testicle removed.

Q  And did that pain problem—if the pain was, in fact, intolerable, and he wanted surgery, would that surgery be related to his October 7 accident or as a result of that accident?

A  Would this pain problem be related?

Q  Yes.

A  Yes.

The physician's testimony was comparative medical evidence, *see Crocker v. Industrial Commission*, 124 Ariz. 566, 568, 606 P.2d 417, 419 (1980), and was properly used to provide a causal link between Johnson's 1977 injury and his increased pain. *See Sneed v. Industrial Commission*, 124 Ariz. 357, 359, 604 P.2d 621, 623 (1979) (requiring a causal link between the original injury and an additional condition).

In *Tarpy v. Industrial Commission*, 138 Ariz. 395, 675 P.2d 282 (App.1983), the Court of Appeals held that subjective pain which requires active medical treatment is a sufficient basis for reopening, even without a change in objective physical findings. In the instant case Johnson testified:

> Q  Okay.  Can you tell us in detail exactly what problems are different now than in October of '78?
>
> A  My testicle hurts more.  He said it should stay the same, but my testicle hurts more, and this pain in my side, and it's like a knot, something pushing against my stomach.
>
> \*   \*   \*   \*   \*   \*
>
> Q  You were just talking about your pain getting worse?
>
> A  Yes.
>
> Q  Has the pain been getting worse since October 20, 1978?
>
> A  Yes.
>
> Q  Okay.  Would you consider removal of the testicle if either Dr. Newman or Dr. Gigax wanted to perform surgery on you, if you thought it would relieve your pain?
>
> A  At this point, yes, I certainly would.

The evidence is sufficient to support a finding that there has been an increase in pain since the petition of 1978 to reopen was denied.  Increased pain, though subjective, requiring new or additional medical treatment, is a sufficient basis for reopening. *Tarpy*, supra.  The award was reasonably supported by the evidence, and the award is affirmed.

## THE COURT OF APPEALS DECISION

The Court of Appeals set aside the decision of the Industrial Commission in a memorandum opinion which, by this opinion, is set aside.  We therefore are not compelled to comment on the opinion of the Court of Appeals.  We do note, however, that the Court of Appeals did state:

> The problem with the present case is that the administrative law judge did not rely on any of these alleged changes in claimant's condition in reopening the claim.  There is no finding in the award in which the administrative law judge determined that a specific change in condition actually occurred.  He notes only that the need to remove the right testicle was not brought to the claimant's attention prior to 1980 and concludes that "such medically determined requirement [the surgery] arose after the prior reopening denial date thereby making it a new, additional or previously undiscovered disability from the October 3, 1977 incident of the injury."  This is the only physical "condition" expressly relied on by the administrative law judge in reopening the claim.

Although the administrative law judge could have been more helpful by specifically stating the basis for reopening, failure to do this was not fatal.  The record supports the administrative law judge's ultimate finding that there was "medical evidence of additional disability."  Workmen's compensation statutes are given a liberal interpretation in favor of the workman. *Pascucci v. Industrial Commission*, 126 Ariz. 442, 444, 616 P.2d 902, 904 (App. 1980).  Even though the wording of the award is not a model of clarity, the facts as gleaned from the record indicate, as noted above, a new or additional condition compared to the awards of 1977 and 1978.  The administrative law judge's finding is indeed reasonably supported by the record.

The Memorandum Decision of the Court of Appeals is vacated, and the award is affirmed.

HOLOHAN, C.J., and GORDON, V.C.J., concur.

FELDMAN, Justice, specially concurring.

I concur in the result. I write separately because I am unable to agree with the limited basis for that result. The court states today that medical benefits are not available for surgery not recommended or offered at the time the claim was closed, even though the evidence is uncontroverted that the surgery has now become appropriate for treatment of the industrial injury. It is not as if the court refuses to interpret an otherwise clear statute. To reach this result, the court is compelled to interpret the statute by inserting the word "physical" before the word "condition," restricting the grounds for reopening to those situations where there has been a change in "physical" condition. The court states, therefore, that need for new medical or surgical treatment is not a "new, additional, or previously undiscovered ... condition" and medical benefits for payment of the treatment are not available. (At 277.)

In my view, by so restricting the words of the statute, the court fails to give sufficient deference to either the constitutional objectives of the Workmen's Compensation Act or the legislative objective in enacting the statute. The statute is part of a system intended by the constitution to replace employees' common law rights with a system of workmen's compensation designed "to assure and make certain a just and humane compensation law ... for the relief and protection of such workmen ... from the burdensome, expensive and litigious remedies for injuries ... now existing in the State of Arizona, and producing uncertain and unequal compensation...." Arizona Constitution, art. 18, § 8.

The issue with which we deal is basically a question of the application of *res judicata* in a no-fault system designed to provide compensation on a continuing basis. *See* Note, *Res Judicata and Reopening Worker's Compensation Claims in Arizona,* 23 Ariz.L.Rev. 1103, 1103–05 (1981). *Res judicata* as a "principle of judicial economy" applies in workmen's compensation cases to bar relitigation of issues which have been determined in the proceeding, including those "which could have been decided" in the proceeding. *Id.* at 1106. However, the doctrine of *res judicata* does not apply in workmen's compensation matters as it does in ordinary tort actions because the objectives of the workmen's compensation system

are best accomplished if the commission can increase, decrease, revive, or terminate payments to correspond to claimant's changed condition. Theoretically, then, commissions ought to exercise perpetual and unlimited jurisdiction to reopen cases as often as necessary to make benefits meet current conditions.

3 A. Larson, *The Law of Workmen's Compensation* § 81.10 at 15–528 (1983). Also, in a workmen's compensation matter, unlike the typical tort case, it is neither possible nor useful to submit evidence of the probability of need for future medical treatment. The concept of *res judicata* does not serve the purposes of the system; it applies in workmen's compensation simply because administrative considerations and practical problems involved in continuing jurisdiction require limitations on the power to open and modify awards. *Id.*

This tension between administrative necessity and the desire to effectuate the purposes of the workmen's compensation legislation has not escaped the attention of this court. We first adverted to the problem in *Zager v. Industrial Commission,* 40 Ariz. 479, 14 P.2d 472 (1932). We stated that only questions which were "existing and known" *at the time of an award* were concluded by the final decision on that award through the doctrine of *res judicata.* We then stated:

But it is common knowledge that the results of physical injuries are often not determinable at the time they are received, and to require that they be then stated is to demand the performance of the impossible....

The Workmen's Compensation Law does not specifically confer on the commission a continuing power over its awards, as is the case in compensation

laws generally, but we think such power is impliedly conferred.... Without a continuing power to alter, amend, or rescind its awards ... the commission would certainly be greatly hampered in its efforts to carry out the spirit of the law.... The spirit of the act is that every employee injured ... in an accident arising out of and in the course of his employment, shall be indemnified therefor in the manner and amounts provided by the act.... To effectuate this wholly laudable and desirable end, the commission must possess and exercise a continuing power to alter, amend or rescind the award if the facts justify it.

*Id.* at 486–88, 14 P.2d 472. In *Zager,* we held, therefore, that the Commission had power to reserve jurisdiction to alter, rescind or amend awards for good cause. The statute which the court construes today was not enacted as a boon granting some limited exceptions to *res judicata* in favor of injured workers; it is a codification, and some limitation, of the *Zager* rule which recognized a broad exception to *res judicata* in workmen's compensation matters. That exception is today construed more narrowly than is either required by the words of the statute or permitted by the philosophy of the Act as recognized in *Zager.*

In my view, the proper test should not be based upon whether there has been a change in physical condition as distinguished from a change in medical condition, nor upon whether there has been a change in pain as subjectively reported by the patient. The proper rule would be to permit reopening upon *comparative evidence* showing that the claimant's current condition is "different or more aggravated than his condition existing at the time of the original hearing." Note, *supra,* at 1119. *Res judicata* would apply and conclude those issues which were or could have been litigated at the time of the

award, even if incorrectly decided. *Id.* at 1117; *see also, id.* at 1109 n. 37.

Thus, reopening and medical benefits would be permitted for changes in any or all of the following circumstances: physical condition, mental condition, pain, toleration of pain, improvements of medical science which make further treatment advisable, recommendations of new treatment, or discovery of injury previously unknown. Reopening for new benefits would not be allowed where there is no change in condition or circumstance, but merely a discovery that the original award incorrectly decided some issue which was or could have been litigated. Adopting such a comparative rule would save us from deciding reopening questions on subtle shadings such as whether the pain has worsened slightly, thus supporting a finding that physical condition has changed a bit. Such distinctions give no solace to employers, since the most unscrupulous claimant is the most likely to experience increased pain. Reopening would be permitted where something has occurred different from what was, or could have been, decided at the time the award became final. This would satisfy the objectives of the Workmen's Compensation Act. It would not violate the statute, because A.R.S. § 23–1061(H) does not forbid reopening on such a basis. The majority opinion indicates (at 277) that no authority for such a theory has been cited,[1] but it is also true that no authority has been cited which has considered and rejected such a theory. This court need but take one small step forward, interpreting the statute in accordance with, and not contrary to, constitutional objectives, and there will then be authority which will bring logic and common sense to the reopening question.

The language used today applies the doctrine of *res judicata* to preclude the payment of benefits for surgery needed today, when the need for that surgery was neither adjudicated nor susceptible of adjudication at the time the award was made. If tomor-

---

1. This is not quite correct. *See* intimations in *Zager v. Industrial Commission, supra; Garrote v. Industrial Commission,* 121 Ariz. 223, 224, 589 P.2d 466, 467 (App.1978); *Capitol Foundry v. Industrial Commission,* 27 Ariz.App. 79, 82, 551 P.2d 69 (1976); *Moccia v. Eclipse Pioneer Division of Bendix Aviation,* 57 N.J.Super. 470, 155 A.2d 129 (1959).

row a totally new type of surgery is devised, offering the prospect of completely curing or rehabilitating the injured worker, the doctrine of *res judicata* will be applied so that the worker will be unable to obtain benefits necessary to procure such treatment.[2] Thus, no matter what the advances in medical science, the injured worker today becomes the captive of a legal system that eschews the reality of scientific progress. In my view, it is neither good law nor good policy to give such a construction to a statute which was presumably passed to effectuate the remedial purposes of the constitution.

HAYS, Justice, dissenting:

I dissent and support the position of the Court of Appeals.

---

**2.** Presumably, if the worker obtains such treatment and pays for it himself, therefore improving his physical condition, the employer will be able to move to reopen and decrease disability benefits on the basis of a changed and improved physical condition. In light of this, the logic of requiring the employee to pay for his own surgery is, at best, tenuous. We should encourage, rather than discourage, rehabilitation.