764 P.2d 335
**CITY OF SCOTTSDALE,
Petitioner Employer,**

**City of Scottsdale, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,**

**Francis Johnston, Respondent
Employee.**

No. 1 CA–IC 3790.

Court of Appeals of Arizona,
Division 1, Department C.

June 28, 1988.

Review Denied Nov. 8, 1988.

Lewis and Roca by Merton E. Marks, R. Todd Lundmark, Phoenix, for petitioner employer/carrier.

Catherine A. Fuller, Chief Counsel, Indus. Com'n, Phoenix, for respondent.

John Winter, Chandler, for respondent employee.

OPINION

FIDEL, Judge.

We review an Industrial Commission award reopening a 1982 workers' compensation claim. The sole issue is whether *Stainless Specialty Mfg. Co. v. Industrial Comm'n*, 144 Ariz. 12, 695 P.2d 261 (1985), extends to the current case. We conclude that the administrative law judge properly relied on *Stainless* to reopen.

*Facts*

On May 20, 1982, the claimant strained his back while working for the City of Scottsdale, a self-insured employer. The City accepted compensability and provided temporary benefits, including payment for conservative orthopedic care, until November 1982, when it terminated the claim without permanent impairment. The claimant initially protested this termination, but, after reaching a settlement agreement with the City, permitted termination to become final.

On March 7, 1983, claimant petitioned to reopen the 1982 claim. The City denied the petition; the claimant protested; a hearing was scheduled.

Meanwhile, on March 8, 1983, claimant began conservative treatment with orthopedic surgeon Ranjit S. Bisla, M.D., who diagnosed a ruptured disc and recommended myelography. The myelogram proved normal, as did a discogram. Dr. Bisla maintained a conservative regimen.

The claimant settled the disputed reopening for a payment of $9,291.47 (reserved by the City as a credit against future benefits) and non-industrial group health coverage of his outstanding medical bills. In turn, the claimant agreed to resign his employment and withdraw his hearing request. His hearing, which had been scheduled for

August 24, 1983, was dismissed on July 19, and the claimant waived his right to protest this dismissal.

After this dismissal, Dr. Bisla continued conservative care until the claimant's poor response led the doctor to recommend surgery. In October 1983, Dr. Bisla performed bilateral laminectomies with decompression of nerve roots for foramenal stenosis at L4–L5 and a spinal fusion from L4 to S1. Despite initial improvement, the claimant's symptoms gradually returned. Dr. Bisla concluded that the fusion had healed improperly; x-rays revealed a pseudoarthrosis ("false joint"). On September 12, 1986, Dr. Bisla performed a second fusion with insertion of Lugue rods and again decompressed the nerve roots.

On October 30, 1986, claimant filed a second petition to·reopen. The City denied reopening, and the matter proceeded to the hearing that gives rise to this appeal.

The claimant testified that he has not worked since July 1983. He admitted that he had back pain and leg pain and cramping when the first reopening was settled and that he had the first surgery simply because these symptoms persisted. Asked when Dr. Bisla first recommended surgery, he testified as follows:

Q. Now, this was before the hearing ... scheduled in August 1983. Dr. Bisla indicated you might need surgery, correct?

A. No, he never said I might, he said I did.

Q. This was before the hearing scheduled in August 1983, correct?

A. Just about that time. I'm not positive.

He also testified that his current symptoms vary but that he has continued to see Dr. Bisla and to take pain medication.

Two medical experts appeared, Dr. Bisla and consulting neurosurgeon Donald William Fisher, M.D. Because the administrative law judge accepted Dr. Bisla's opinion, we place our focus there.

Dr. Bisla confirmed that, though he originally diagnosed a disc herniation, he ultimately diagnosed facet joint syndrome with instability. He was not asked to specify when he reached this conclusion, but he testified that he treated the claimant conservatively from· March through October 1983 for the symptoms of this syndrome. He decided to perform surgery to relieve the unimproved symptoms. Dr. Bisla added that the industrial injury was at least among the causes of the first surgery and that the second surgery was necessary to remedy residual problems of the first.

On May 29, 1987, the administrative law judge issued his award. Based on Dr. Bisla's testimony, the judge found that, though it was uncertain whether the facet joint syndrome was discovered before the 1983 settlement, surgery for this condition was not a "viable option" until October 1983. Relying on *Stainless*, he concluded that this "evolution of medical need" after the July 1983 settlement and dismissal date satisfied the standard for reopening. Accordingly, he reopened and awarded both medical and temporary disability benefits "as may be provided by law...."

On administrative review, the City submitted Dr. Bisla's medical reports, indicating that he had first diagnosed facet joint syndrome in April 1983. The administrative law judge excluded the newly submitted reports as untimely. *See generally, e.g., Southwest Nurseries v. Industrial Comm'n*, 133 Ariz. 171, 650 P.2d 473 (App. 1982). Upon administrative review he amended the award as follows:

12. Obviously, if it could be determined from the record that facet joint syndrome was an unknown condition in July 1983, then there would be an additional basis for reopening. The evidence is insufficient to determine just when such condition became known to Dr. Bisla. However, there was *no evidence set forth that applicant actually needed surgery in or prior to July 1983* on the basis of the care and procedures employed. (emphasis added)

There was a continuation of applicant's symptoms following dismissal of applicant's REQUEST FOR HEARING in July 1983. "If the condition is unchanged but the continued symptoms

make treatment appropriate where it was not before, reopening should be permitted." *Stainless Specialty Manufacturing Co. v. Industrial Commission, supra,* [144 Ariz.] at page 19 [695 P.2d 261]. According to Dr. Bisla, conservative treatment was no longer appropriate to alleviate applicant's symptomatology and surgery was performed subsequent to July 1983.

The City asks upon review that we set aside the Industrial Commission award. *Stainless,* the City argues, does not extend to the October 1983 surgery and its sequelae. The claimant concedes that *Stainless* is the sole basis for reopening, but argues that the administrative law judge properly applied that case.

### Stainless and Bill Breck

We begin our analysis with the predecessor to *Stainless, Bill Breck Dodge Inc. v. Industrial Comm'n,* 138 Ariz. 388, 675 P.2d 275 (1983) (Feldman, J., specially concurring). The claimant in *Bill Breck* had filed an initial petition to reopen on the ground of newly developed atrophy in his testicle. The carrier denied his petition, and the claimant permitted the denial to become final. Subsequently, because the claimant could no longer tolerate the pain of his condition, his doctor recommended surgery. Claimant again petitioned to reopen, and the Industrial Commission reopened, awarding benefits on the basis of the newly recommended surgery.

A majority of the supreme court affirmed, not because the claimant's doctor's change of recommended treatment supported reopening, but because the reopening standard was satisfied by the claimant's increased pain. *Id.* at 390–91, 675 P.2d at 277–78. In a special concurrence, however, Justice Feldman reasoned that the newly recommended mode of treatment independently justified reopening. *Id.* at 392–94, 675 P.2d at 279–81.

Justice Feldman's concurring view in *Bill Breck* commanded a majority of the court in *Stainless.* There the claimant had remained symptomatic despite multiple knee surgeries. Temporary benefits were terminated with a significant permanent

impairment upon his physician's closing report, "I do not feel that further surgery is indicated...." 144 Ariz. at 14, 695 P.2d at 263. His physician, however, had also recommended the transfer of care to another doctor, stating that a fresh opinion might be advantageous and might lead to further surgery if another surgeon thought it beneficial. The termination became final. Thereafter, upon the advice of another surgeon, claimant underwent a surgical procedure that his original surgeon was untrained to perform. Before undergoing this surgery, the claimant petitioned to reopen; the carrier denied the petition. The Industrial Commission ultimately reopened on the basis of an "evolution" of medical opinion of the need for surgery. Although this court set aside the award, relying on the majority decision in *Bill Breck,* the supreme court vacated our decision, holding that "reopening is permissible when a change in physical circumstances *or medical evaluation* creates a need for treatment, and the legitimacy of that need was not and could not have been adjudicated at the time of the last award." *Id.* at 18–19, 695 P.2d at 267–68 (emphasis added).

### Application of Stainless

■ The supreme court spoke in *Stainless* of "change in physical circumstances or medical evaluation." The claimant in this case underwent no "change in physical circumstances" after permitting termination to become final, but did undergo a change in "medical evaluation." Whereas Dr. Bisla had initially prescribed conservative treatment, he later came to the view that surgery should be tried.

The City argues, however, that this is not the kind of change in medical evaluation that should support reopening under *Stainless.* The conservative treatment recommended by Bisla at the time of prior closure, according to the City, was one form of *active* care; surgery was another. Thus, the City reasons, the claimant could have contested his need for active care from the outset and should not be permitted to upset finality merely because his

doctor changed his view of the desirable modality of care.

Whatever merit the City's argument might have in other circumstances, we find it unconvincing where the pivotal change in medical recommendation is from conservative care to surgery. Conservative treatment attempts relief without the cost, risk, or invasive attributes of surgery. By nature a trial process, at the outset such treatment provides no certainty of success. In July of 1983, the claimant was undergoing a trial period of conservative care. From a contested record we defer to the administrative law judge's finding that surgery had not by then been recommended. The legitimacy of the October 1983 surgery could not be litigated until the continuity of symptoms warranted such surgery.

The City next argues that *Stainless* is limited to treatments "explicitly foreseen" at the time of prior closing. It derives this limitation from the following observation in *Stainless:*

> Here, unlike in *Bill Breck Dodge*, reopening is not based upon a subjective perception of change in pain level, but rather upon a change in medical procedures recommended to treat the same physical condition, *where the possiblity of such future need was explicitly foreseen at the time of closing.*

144 Ariz. at 17, 695 P.2d at 266 (emphasis in text).

We do not regard the underscored language as a condition for the application of the *Stainless* rule. It would be inequitable to extend *Stainless* to a claimant whose physician had commented in a closing report on the possibility of a future mode of treatment but to deny it to a claimant whose physician had entertained that possibility in silence. It would likewise be inequitable to limit reopening under *Stainless* to claimants who suffer the predictable complications of an injury but prohibit reopening to those suffering the unpredictable. Nor do we believe the supreme court intended such a limitation. The supreme court extended reopening in *Stainless* to treatments explicitly foreseen because "there is no provision in workers' compensation cases to allow a present award of benefits for treatment which may become necessary in the future." 144 Ariz. at 16, 695 P.2d at 265. The supreme court acknowledged, however, that reopening is also available for unanticipated consequences. *Id.*

The City next argues that *Stainless* applies only to new or relatively unavailable medical treatments. Again we disagree. The previous unavailability of form of treatment is simply one particularly strong justification for reopening.

> [W]here there is evidence that the circumstances have changed since closing, ... reopening will be supported. If, *for instance*, a new medical treatment has evolved ..., reopening is proper even though the claimant's physical condition has not changed. If the condition is unchanged but the continued symptoms make treatment appropriate where it was not before, reopening should be permitted.

*Stainless*, 144 Ariz. at 19, 695 P.2d at 268 (emphasis added).

The City's last argument is that the claimant's delay in petitioning to reopen should bar recovery. We disagree. The reopening statute has no limitation period. Rather, it includes a retroactivity limitation: "No surgical benefits or monetary compensation shall be payable for any period prior to the date of filing of the petition to reopen." A.R.S. § 23–1061(H).

Because we conclude that the administrative law judge properly applied *Stainless* and that the evidence supports his decision, we affirm.

CORCORAN, P.J., and SHELLEY, J., concur.