880 P.2d 654

**A.J. BAYLESS, Petitioner Employer,**

**Argonaut Insurance Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION of ARIZONA, Respondent,**

**Steve Erdos, Respondent Employee.**

No. 1 CA–IC 92–0147.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 23, 1993.

Review Denied Sept. 20, 1994.

Long, Lester & Lundmark, P.A. by Steven C. Lester, Phoenix, for petitioner employer and petitioner carrier.

Anita R. Valainis, Chief Counsel, the Indus. Com'n of Arizona, Phoenix, for respondent.

Ronald M. Meitz, Phoenix, for respondent employee.

## OPINION

CONTRERAS, Judge.

This is a review of an Arizona Industrial Commission award and decision upon review reopening a 1986 back injury claim based upon findings that subjective complaints had worsened, were related to the industrial injury, and required active care. The issues presented are (1) whether a previous award terminating the 1986 claim and a related 1984 back injury claim without permanent impairment precluded reopening; and (2) whether sufficient evidence supports reopening. We conclude that reopening is not precluded and that sufficient evidence supports reopening. Accordingly, the award is affirmed.

## FACTUAL AND PROCEDURAL HISTORY

On November 17, 1984, respondent employee ("claimant"), a butcher, injured his lower back while lifting turkeys at work. After this injury, he complained of lower back and radiating left leg pain. A December 1984 CT scan revealed a central and left-sided disc bulge at L5–S1 with a partial compromise of the neural foramen. After several months of conservative care, claimant's family physician, William H. Devine, D.O., released him to regular work.

Despite ongoing symptoms, claimant returned to work for petitioner employer. On April 12, 1986, he again injured his lower back when he fell at work. Although the 1984 injury claim remained open, petitioner carrier ("Argonaut") paid all benefits under the second injury claim.

After the second injury, claimant complained of increased back and bilateral leg pain and never returned to work. A January 1987 myelogram and CT scan again revealed a central and left-sided disc bulge at L5–S1, which according to the radiologist "effac[ed] the thecal sac in the origin of the S1 rootlets, probably with no significant compromise."

In April 1987, Argonaut referred claimant to the Southwest Disability Evaluation Center for a group independent medical examination. The group, which included neurosurgeon Volker K.H. Sonntag, M.D., commented that the 1987 CT scan revealed a disc bulge that "did not seem to be remarkable and it was felt not to be of any significance." During the physical examination, claimant walked stiffly and slightly bent over with a waddling gait, and his range of motion was severely restricted. The consultants concluded that claimant was stationary without objective evidence of permanent impairment and that he could return to regular work.

Relying on this report, Argonaut terminated both the 1984 and the 1986 injury claims. Claimant requested a hearing. Pending the hearing, he saw, among others, orthopedic surgeon Stuart B. Phillips, M.D., and Dr. Sonntag reexamined him. Argonaut also placed claimant under surveillance and filmed him, among other things, bending, walking rapidly, running, and using his entire body to pull-start a boat motor, all without any apparent restriction.

At the ensuing hearings, the medical experts included Drs. Devine, Phillips, and Sonntag. Dr. Devine diagnosed a true radiculopathy related to the L5–S1 disc bulge. In his opinion, this condition was progressing toward surgery. Although Dr. Devine had not seen the surveillance films, he testified that "if someone suggested the man's malingering, it's because they didn't know him before and I want to tell you it's absolutely wrong and preposterous."

Dr. Phillips interpreted the 1984 CT scan to show that the disc bulge compromised the S1 nerve root, and he also diagnosed radiculopathy on this basis. He, however, conceded that his clinical findings were contradictory and that the surveillance films were inconsistent with claimant's altered gait and restricted motion during examination. He also agreed that the disc bulge could be a degenerative change that preexisted the industrial injuries and, therefore, that his opinion that the injuries contributed to the radiculopathy depended on the credibility of claimant's history.

Dr. Sonntag, in contrast, testified that the diagnostic studies were either normal or inconclusive. He found no clinical evidence of radiculopathy and reiterated that claimant had no permanent impairment. After reviewing the surveillance films, he suggested that claimant had tried to "masquerade" during examination.

The Administrative Law Judge ("ALJ") in due course issued an award terminating both injury claims without permanent impairment. He relied on the surveillance films to find that claimant "when being examined was masquerading or feigning." He also concluded that the April 16, 1987 group report was "most likely correct." Without further explanation, the ALJ terminated both claims without permanent impairment from and after April 16, 1987, the date of the group examination.

On review, claimant argued that the more persuasive medical evidence established a permanent impairment related to the industrial injuries regardless of claimant's credibility. Argonaut responded by arguing that claimant could establish that the industrial injuries caused or aggravated the L5–S1 disc bulge only if the ALJ accepted claimant's history. The ALJ affirmed the award without modification, and the terminations became final.

Claimant continued treatment with Dr. Devine and complained of progressively worsening symptoms. In March 1989, claimant had a third CT scan. In an addendum,[1] the radiologist reported a "[s]light accentuation of the central and right lateral posterior disc herniation or protrusion compared with the previous study." The comparison, however, was to the 1984 CT scan, not to the 1987 CT scan. On the face of this addendum, Dr. Devine wrote, "New Information: Condition has gotten worse on CT Scan! Clinical condition is worse."

Dr. Devine referred claimant to neurosurgeon William L. White, M.D., who examined him on August 15, 1989. On August 22, 1989, claimant filed a petition to reopen and subsequently filed the March 1989 addendum to

support it. On September 7, 1989, the commission notified Argonaut of this petition.

Meanwhile, on September 6, 1989, claimant had another myelogram and CT scan. The radiologist reported that the bulge touched nerve rootlets but did not significantly compromise them. On September 14, 1989, Dr. White, assisted by Dr. Devine, performed lower back surgery on claimant. The pre- and post-operative diagnosis was a bilateral herniated L5–S1 disc. The operative findings, however, were a mild bulge of the L5–S1 disc on the left, a moderate bulge on the right, and a soft annulus. The body of the report does not expressly refer to decompression of any nerve roots.

On October 13, 1989, Argonaut denied reopening. Claimant requested a hearing. Pending the hearing, Argonaut raised the affirmative defense of res judicata (preclusion). Argonaut also referred claimant to Irwin Shapiro, M.D., for an independent medical examination.

At the ensuing hearings before a different ALJ, Drs. Devine, White, Shapiro, and Sonntag provided medical testimony. Dr. Devine testified that claimant's condition deteriorated to the degree that he walked with a stumbling gait and could not stand erect. In his opinion, surgery became necessary because of this worsened condition just as he had anticipated in 1987. Dr. Devine conceded, however, that he had no written record of neurologic changes since the claims were closed.

Dr. Devine related the surgery and the industrial injuries, but he acknowledged that his causation opinion was unchanged and presupposed that the industrial injuries permanently aggravated the disc pathology at L5–S1. Regarding the surgical findings, Dr. Devine testified that, "I assisted decompressing and I held back the dural sleeve as we took the disc off. The sleeve was pink, it was inflamed.... I've seen fresh herniated discs ... but this wasn't. It was dry disc and difficult to remove." He, however, acknowl-

1. The CT scan film and report apparently were lost and, therefore, could not be reviewed independently.

edged that the surgery had only partially relieved claimant's symptoms.

Dr. White testified that his examination findings were essentially the same as those of the group in 1987. Relying on Dr. Devine's history that claimant's condition had deteriorated, however, Dr. White agreed that claimant had worsened since 1987. Dr. White, however, could not explain these worsened symptoms. Although the 1989 addendum reported a slight accentuation of the disc bulge, Dr. White doubted the significance of this finding and acknowledged that the September 1989 myelogram and CT scan showed no change compared to the same studies in 1987. He also explained that his operative report used the term "herniation" synonymously with "bulge." The parties did not otherwise question Dr. White about his surgical findings.

Regarding causation, Dr. White acknowledged that his operative findings were consistent with degenerative disc disease and that any causal link between this disease and the industrial injuries depended on the credibility of claimant's history. He also stated that he disagreed with the 1987 group's conclusion. In his opinion, the industrial injuries permanently aggravated the disc bulge at L5–S1.

Dr. Shapiro testified that the September 1989 myelogram and CT scan revealed only a disc bulge without any nerve root compromise. He concluded that claimant had nothing new, additional or previously undiscovered compared to the findings and conclusions of the April 1987 group.

Dr. Sonntag reiterated his opinion that the 1987 CT scan and myelogram were essentially normal. He explained that the 1987 group concluded that claimant was not impaired because they simply found no evidence of permanent impairment, not because they found evidence of an impairment but concluded that it was unrelated to the industrial injuries. Finally, Dr. Sonntag testified that the September 1989 myelogram and CT scan

also were normal and showed no nerve root compromise.

The ALJ then issued an award reopening both claims. Regarding the preclusion defense, he found that issue preclusion alone applies to subsequent stages of a claim but that it did not apply in this case.[2] He also resolved the medical conflicts in favor of Drs. Devine and White and concluded that claimant had established a worsened subjective condition sufficient to reopen under *Tarpy v. Industrial Comm'n*, 138 Ariz. 395, 675 P.2d 282 (App.1983).

On administrative review, the ALJ modified the award to find that "[a]ny allegation that the applicant lacked credibility at the time of the previous hearings must be mitigated by the medical findings which establish a change in condition." He also applied the successive injury doctrine to reopen only the 1986 claim. Argonaut then brought this special action.

## DISCUSSION

### A. Preclusion

On review, Argonaut first asserts that the prior award terminating the 1984 and 1986 claims precluded reopening. Claimant, of course, denies that the prior award had any preclusive effect. In their assertions and denials, neither party discusses the standard of review applicable to this question. *See* Rule 13(a)(6), Ariz.R.Civ.App.P. ("With respect to each contention raised on appeal, the proper standard of review on appeal shall be identified, with citations to relevant authority, at the outset of the discussion of that contention."). Consequently, before addressing the merits of the parties' preclusion arguments, we must independently address our standard of review.

■ Prior cases have assumed without discussion that the applicability of preclusion is a question of law justifying an independent judgment standard of review. *See, e.g., Cig-*

2. The dispositive finding states:
    In the present matter numerous physicians have testified currently and in the past. Transcripts of the previous proceedings as well as the medical reports and the current hearings

have all been considered. It is found that issue preclusion does not apply in this case and that the appliant [sic] should not be barred by the defense of *res judicata*.

*na Health Plan v. Industrial Comm'n,* 168 Ariz. 118, 122–23, 811 P.2d 370, 374–75 (App. 1991); *Western Cable v. Industrial Comm'n,* 144 Ariz. 514, 518–19, 698 P.2d 759, 763–64 (App.1985); *Red Bluff Mines, Inc. v. Industrial Comm'n,* 144 Ariz. 199, 203–05, 696 P.2d 1348, 1354–56 (App.1984). The applicability of preclusion, however, may involve disputed questions of fact: for example, whether a particular issue was litigated or determined by a prior award. The better view, therefore, is that the applicability of preclusion is a mixed question of fact and law. Accordingly, a deferential standard of review applies to resolutions of disputed facts when supported by reasonable evidence; an independent judgment standard of review applies to the ultimate conclusion that these facts do or do not trigger preclusion. *See* 18 Charles A. Wright et al., *Federal Practice and Procedure* § 4405 at 28 (Supp.1993).

We turn now to the parties' arguments. Argonaut first argues that the ALJ erroneously concluded that only issue preclusion applies to successive stages of a claim.[3] We need not decide this abstract question because, in any event, claim preclusion does not apply to the present case.[4]

■ Claim preclusion bars a claimant from "splitting" a claim.[5] *See, e.g.,* Restatement (Second) of Judgments § 24 (1980). In the current case, claimant did not split his claim. He simply failed in his burden of proving that the disc bulge at L5–S1 caused a permanent impairment. Claim preclusion, therefore, does not apply to this case.

■ Argonaut next argues that issue preclusion bars relitigation of the causal relationship between the industrial injuries and the disc bulge at L5–S1. Although we agree in principle that issue preclusion may bar relitigation of causation, *see, e.g., Perry v. Industrial Comm'n,* 154 Ariz. at 231, 741 P.2d at 698, we disagree that it applies in the current case.

■ Issue preclusion applies if, but only if, an issue was litigated, determined, and that determination was necessary to the decision. *E.g., Cigna Health Plan,* 168 Ariz. at 123, 811 P.2d at 375. The party asserting preclusion has the burden of proving that an issue was in fact litigated and determined and that this determination was necessary. *See, e.g.,* 18 Wright et al., *supra,* § 4405 at 38 (1981).

Claimant mistakenly relies on *Cigna* to argue that the terms of the termination award are controlling. Unlike the present case, *Cigna* involved a settlement agreement. Because the parties to a settlement control its terms, the terms of the agreement are controlling:

> Assuming *arguendo* that a claimant may bargain away a potential right to reopen, . . . the terms of the settlement must unambiguously express such a bargain. . . .

---

3. To support this argument, Argonaut cites two cases: *Perry v. Industrial Comm'n,* 154 Ariz. 226, 228–31, 741 P.2d 693, 695–98 (App.1987) and *Magma Copper Co. v. Industrial Comm'n,* 115 Ariz. 551, 553–54, 566 P.2d 699, 701–02 (App. 1977). Although *Magma* applied claim preclusion to a petition to reopen for a mental condition that was manifest during the protest period for a prior denial of benefits for a physical condition, the mental condition actually had improved when the reopening petition was filed. *Magma,* therefore, does not address whether claim preclusion bars reopening for a worsened condition. *Perry,* on the other hand, involved a tactical decision to assert one of two causation theories for the same condition. It, therefore, applied issue rather than claim preclusion. *See* Restatement (Second) of Judgments § 27 cmt. c, illus. 4 (it is reasonable to require claimant to bring forward all evidence in support of his theory in the initial proceeding).

4. For an additional discussion of "claim preclusion" and "issue preclusion" *see Circle K Corporation v. Industrial Comm'n,* 179 Ariz. 422, 880 P.2d 642 (App.1993).

5. For present purposes, we assume that a claim includes every condition that at a particular claim stage is manifest, serious, and that a claimant reasonably believed or should have reasonably believed is related to an industrial injury. *Cf., e.g., Pacific Fruit Express v. Industrial Comm'n,* 153 Ariz. 210, 213–14, 735 P.2d 820, 823–24 (1987) (defining compensation claim for purposes of accrual of statute of limitations); *see also* Ray K. Harris, Note, *Res Judicata And Reopening Workers' Compensation Claims In Arizona,* 23 Ariz.L.Rev. 1103, 1115 (1981) (suggesting use of accrual standard for reopening). A claimant "splits" a claim by failing to claim benefits for any such condition when he or she had an opportunity to do so. Claim preclusion precludes subsequently making the claim for this same condition.

[T]he agreement must specify the issues that have been finally determined. Generalities are insufficient.

*Cigna Health Plan*, 168 Ariz. at 123, 811 P.2d at 375. In contrast, the parties do not control the terms of a medical report or the findings of an award. The party asserting preclusion, therefore, "is not limited to the formal record of the prior action," and the proof of what was litigated and determined "may involve elaborate processes of inference." 18 Wright et al., *supra*, § 4405 at 38; *accord* Restatement (Second) of Judgments, *supra*, § 27 cmt. f.

In the present case, the prior termination award did not include a causation finding. Argonaut accordingly relies on inferences to argue that the first ALJ must have determined that the industrial injuries neither caused nor contributed to the disc bulge at L5–S1:

> [T]he issue of whether the Claimant had permanent impairment causally related to the industrial injury ... necessitated a determination ... as to whether the industrial injuries caused, contributed to or permanently affected the Claimant's L5–S1 disc pathology. By resolving the medical conflict against the Claimant, and holding that the Claimant had sustained no permanent impairment as a result of the industrial injury, the Administrative Law Judge made an initial determination that the industrial injuries did not permanently affect the Claimant's L5–S1 disc pathology.

This argument accurately describes claimant's burden of proof. To establish a permanent impairment, claimant had to prove that the disc bulge was pathological and that the industrial injuries caused or contributed to the bulge. It, however, inaccurately describes Argonaut's defenses. Argonaut not only disputed causation, it also denied that the disc bulge was pathological. Both the 1987 group and Dr. Sonntag separately concluded that the disc bulge was normal. Because the first ALJ accepted this conclusion, he did not have to determine whether the industrial injuries caused or contributed to the disc bulge to terminate these claims without permanent impairment. Issue preclu-

sion, therefore, does not apply to the issue of causation.

■ Argonaut also argues that issue preclusion bars relitigation of the authenticity of claimant's complaints. We again disagree. Although the prior termination award did include a finding that claimant was masquerading or feigning symptoms during medical examinations, issue preclusion also requires a determination to have been necessary:

> [T]he inquiry into necessity is likely to be a largely objective process, in which a later court simply asks what was reasonably necessary to support the prior judgment. The possibility that a particular finding may have played a central role in the subjective process of deciding the first action is apt to be put aside, primarily because it is very difficult to reconstruct the process of decision with any certainty.

18 Wright et al., *supra*, § 4421 at 196.

Argonaut contends that the finding that claimant feigned his complaints was necessary because claimant could rule out an exclusively degenerative cause only if the first ALJ accepted claimant's history. This argument again erroneously assumes that the ALJ concluded that the disc bulge was pathological but related exclusively to degenerative disc disease. He instead accepted the group's conclusion that the bulge was normal. The question, then, is whether the ALJ had to reject claimant's history to accept the group's conclusion.

The group examination occurred *before* the surveillance. The stated basis for the group's conclusion was the absence of objective evidence of permanent impairment. Even if no surveillance had occurred or the ALJ had found it unconvincing, he nevertheless could have accepted the group's conclusion that the diagnostic tests revealed no nerve root compromise. Moreover, despite the finding that claimant was feigning, the ALJ could have accepted Dr. Phillip's interpretation of the diagnostic tests. Although the finding that claimant was feigning symptoms may have subjectively influenced the ALJ to accept the group's conclusion, the finding was not necessary. Consequently, issue preclusion also is inapplicable to the issue of the authenticity of claimant's complaints.

Assuming *arguendo* that issue preclusion may apply to the authenticity issue because "real care was in fact taken in litigating and deciding the unnecessary issue," *id.* at 200, we disagree with the parties' contentions concerning the scope of issue preclusion. Argonaut, on one extreme, contends that issue preclusion would foreclose reconsideration of the authenticity of claimant's complaints under any circumstances. Claimant, on the other extreme, contends that issue preclusion never forecloses such reconsideration if medical evidence supports reopening for a worsened condition.

■ Argonaut's position ignores the statutory exception to finality afforded by reopening under Ariz.Rev.Stat.Ann. ("A.R.S.") section 23–1061(H) (allowing reopening of closed claim for "new, additional or previously undiscovered ... condition"). Even if an issue was litigated, and necessarily determined, reopening allows litigation of the issue based upon qualitatively different evidence that could not have been presented at the first hearing. *Cf., e.g., Lasiter v. Industrial Comm'n*, 173 Ariz. 56, 64, 839 P.2d 1101, 1109 (1992) (affirming award reopening claim when new diagnostic test confirmed pseudoarthrosis); *Salt River Project v. Industrial Comm'n*, 128 Ariz. 541, 543–45, 627 P.2d 692, 694–96 (1981) (affirming award reopening claim when surgery revealed that herniated disc "true cause" of unchanged symptoms); *accord Chappell v. Industrial Comm'n*, 174 Ariz. 220, 223, 848 P.2d 305, 308 (App.1992) (dictum) (suggesting that even though claimant litigated whether recommended surgery reasonably necessary and lost, she could petition to reopen, have the surgery, and if the treatment proved to be effective, recover compensation benefits); *Pascucci v. Industrial Comm'n*, 126 Ariz. 442, 445, 616 P.2d 902, 905 (App.1980) (Jacobson, J. dissenting) (affirming reopening when termination based on resolution of conflicting interpretations of myelogram and claimant subsequently had surgery that revealed herniated disc). *But see Black v. Industrial Comm'n*, 89 Ariz. 273, 275–76, 361 P.2d 402, 403 (1961) *overruled by Salt River Project*, (precluding reopening because blood bromide tests concluded after protest period expired merely additional evidence concerning unchanged condition considered when case closed); *Standard Brands Paint Co. v. Industrial Comm'n*, 26 Ariz. App. 365, 367, 548 P.2d 1177, 1179 (1976) (precluding reopening because discogram performed after award merely additional evidence concerning unchanged condition considered when case closed).

■ In contrast, claimant's position completely undermines finality. According to claimant, despite the prior finding that he feigned his complaints, he need only allege subjective worsening and support his claim with Dr. Devine's (or some new expert's) testimony that claimant is believable. The remedial purpose of reopening is served by affording an opportunity to present qualitatively different evidence bearing on credibility that could not have been presented previously. But if the evidence presented at reopening is qualitatively similar to the evidence presented at termination, then reopening must be precluded to avoid rewarding judge and doctor shopping.

Applying our standard of review to this requirement, we defer to the second ALJ's factual findings, but we independently assess whether the evidence supporting the award is qualitatively different from the evidence previously presented. In our opinion, nothing occurring before the surgery was qualitatively different.

■ Dr. Devine again relied on his clinical judgment and belief that claimant was sincere. He admitted never having reported new neurologic findings. Although he cited the March 1989 addendum as evidence of change, the addendum actually compared claimant's condition in 1989 to his condition in 1984.[6] The subsequent CT scan showed no change compared to the 1987 CT scan. Dr. White, in turn, merely relied on Dr. Devine's opinion that claimant had deteriorated. Dr. White's own evaluation was the same as the 1987 group's evaluation. He simply disagreed with the group's conclusion. In short, this evidence merely replicated the case for disc pathology that the first ALJ rejected. Reopening on this basis should be precluded.

---

**6.** The ALJ found that the comparative dates for the purpose of reopening were the date of the termination (April 16, 1987) and the date of the petition to reopen (August 22, 1989).

The surgery, in contrast, provided qualitatively different evidence. Prior to surgery, the experts had disputed whether the diagnostic tests and clinical findings demonstrated nerve root compromise and related radiculopathy. According to Dr. Devine's uncontradicted testimony, the surgery revealed that the disc bulge compressed the nerve root, which was inflamed. The reopening remedy should allow reconsideration of the issue of the authenticity of claimant's complaints in light of this new evidence.

### B. Sufficiency of Evidence and Findings

Argonaut also denies the sufficiency of the evidence to support reopening because claimant failed to prove any objective difference in his condition in 1989 compared to his condition in 1987. We disagree that a finding of objective change was necessary.

The ALJ properly relied on *Tarpy*, which allows reopening for worsened subjective complaints that are industrially related and that result in securing any other benefit allowed under the Workmens' Compensation Act. *Tarpy*, 138 Ariz. at 396–97, 675 P.2d at 283–84; *see also Stainless Specialty Mfg. Co. v. Industrial Comm'n*, 144 Ariz. 12, 18–19, 695 P.2d 261, 267–68 (1985) ("reopening is permissible when a change in physical circumstances or medical evaluation creates a need for treatment, and the legitimacy of that need was not and could not have been adjudicated at the time of the last award."). Reopening under *Tarpy* does not require a finding of objective change. Moreover, in our opinion, the surgical findings would justify reopening under *Pascucci v. Industrial Comm'n*, 126 Ariz. at 445, 616 P.2d at 905. It follows that reopening for the previously undiscovered nerve compression and irritation does not require a finding of objective change. *See Crocker v. Industrial Comm'n*, 124 Ariz. 566, 568–69, 606 P.2d 417, 419–20 (1980).

For these reasons, we affirm the award.

JACOBSON, P.J., and LANKFORD, J., concur.