NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

ZORICA SAVIN, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

ASSISTED CARE AT HOME, INC., *Respondent Employer*,

THE PHOENIX INSURANCE CO., *Respondent Carrier*.

No. 1 CA-IC 14-0043
FILED 3-12-2015

———————————————

Special Action - Industrial Commission
ICA Claim No. 20122-080434
Carrier Claim No. 127-CB-EPE4290-E
The Honorable Paula R. Eaton, Administrative Law Judge

**AWARD AFFIRMED**

———————————————

COUNSEL

Zorica Savin, Hallandale, FL
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Klein Doherty Lundmark Barberich & La Mont, PC, Tucson
By Eric W. Slavin
*Counsel for Respondent Employer and Respondent Carrier*

---

## MEMORANDUM DECISION

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Chief Judge Diane M. Johnsen joined.

---

**C A T T A N I**, Judge:

**¶1**         This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review by an administrative law judge ("ALJ") finding that Zorica Savin did not sustain a loss of earning capacity resulting from an industrial injury to her right shoulder. For reasons that follow, we affirm the award.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**         Savin, who worked as an in-home caregiver for senior citizens and special needs patients, was injured at work in July 2012 when a patient's family member pushed her into a wall, resulting in a tear in the rotator cuff of Savin's right shoulder. At the time, Savin worked for three different employers totaling over 80 hours each week. The carrier accepted her claim for benefits.

**¶3**         Savin underwent surgery in November 2012 to repair the tear, and by March 2013, the treating surgeon determined Savin had "achieved maximal medical improvement" with a 4% permanent impairment and no functional restrictions or limitations. On that basis, the ICA closed Savin's claim with no loss of earning capacity. Savin challenged that determination and requested a hearing.

**¶4**         In May 2013, Savin was examined by Dr. Steve Fanto, a board-certified physician in physical medicine, rehabilitation, and pain medicine. Dr. Fanto noted that Savin suffered residual pain after the surgery and that she had decreased strength and range of motion in her right shoulder. Given these physical restrictions stemming from the industrial injury, Dr. Fanto opined that, although Savin could perform 40 hours per week (or more) of light duty or sedentary work, she would be limited to lifting a maximum of 20 pounds (10 pounds with frequency) and no overhead lifting. These restrictions would be incompatible with Savin's pre-injury employment, which required lifting 50 pounds or more.

**¶5** In October 2013, the carrier sent Savin for an independent medical evaluation ("IME") with Dr. Amit Sahasrabudhe, a board-certified orthopedic surgeon. Dr. Sahasrabudhe's October report noted Savin's continued right shoulder pain and that this pain restricted Savin's range of motion. Based on Savin's statements, her medical records, and the physical examination, Dr. Sahasrabudhe opined that Savin could work over 40 hours per week, but that Savin's shoulder injury would limit her to lifting a maximum of 20 pounds overhead (10 pounds with the right arm alone) and 40 pounds floor to waist. Accordingly, he concluded that Savin could no longer perform her pre-injury job, which required 50 pounds' overhead lifting.

**¶6** One month later, Dr. Sahasrabudhe filed a supplemental report changing his opinion on the basis of additional medical records and surveillance video showing, among other things, Savin at the beach with her granddaughter. Dr. Sahasrabudhe explained that the surveillance footage showed Savin lifting an approximately 25-pound child without any apparent pain or difficulty, and it showed her reaching almost directly overhead to close the tailgate of a vehicle. The video contradicted Savin's statements about shoulder pain, as well as the range of motion she had shown during the IME. Based on this new information, Dr. Sahasrabudhe opined that Savin could return to her pre-injury employment without any restrictions.

**¶7** At the hearing, Dr. Fanto testified that, although he had not seen the surveillance video, the investigator's report summarizing the video did not refer to any activities (such as overhead lifting or lifting heavy weights) that would have exceeded Savin's lifting restrictions. His review of the description of the video thus did not change his medical opinion. The surveillance footage was provided to the ALJ as evidence.

**¶8** In addition to Savin, Dr. Fanto, and Dr. Sahasrabudhe, two labor market experts testified at the hearing before the ALJ. Savin's expert testified that, based on the restrictions noted by Dr. Fanto, Savin would be entitled to a monthly award of $953.99 or $1,119.86 for loss of earning capacity, depending on what kind of light duty job was considered. Savin's expert agreed that, if there were no medical restrictions, Savin would have no loss of earning capacity as long as she could replicate her 80+ hour week logistically. In contrast, the carrier's labor market expert testified that, absent medical restrictions, Savin's shoulder injury did not result in any loss of earning capacity.

**¶9**        The ALJ found Savin not credible and accepted Dr. Sahasrabudhe's medical opinion rather than Dr. Fanto's conflicting opinion.  On that basis, the ALJ determined Savin was capable of returning to her pre-injury employment and, accordingly, that the injury had not caused a loss of earning capacity.  After the ALJ affirmed the decision upon review, this timely special action followed.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(2) and 23-951(A) and Arizona Rule of Procedure for Special Actions 10.[1]

## DISCUSSION

**¶10**        On review of a workers' compensation award, we defer to the ALJ's factual findings, but consider questions of law de novo.  *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003).  The ALJ has primary responsibility for resolving any conflict in the medical experts' testimony, and we will not disturb the ALJ's resolution of a conflict unless it is "wholly unreasonable."  *Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 19, 695 P.2d 261, 268 (1985).  We will affirm the award unless, viewing the evidence in the light most favorable to sustaining the award, there is no reasonable basis for the ALJ's decision.  *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

**¶11**        If an industrial injury causes a permanent partial disability, the claimant is entitled to compensation for a resulting loss of earning capacity.  A.R.S. § 23-1044(C).  The award is calculated based on the difference between the claimant's average monthly pre-injury wage and the potential wage for "the type of work the injured employee is able to perform subsequent to the injury."  A.R.S. § 23-1044(C)–(D).  The claimant has the burden to show any loss of earning capacity due to the injury. *Franco v. Indus. Comm'n*, 130 Ariz. 37, 39, 633 P.2d 446, 448 (App. 1981).

**¶12**        Savin first argues that the ALJ erred by allowing the surveillance video into evidence.  A video recording may be admitted into evidence if it reasonably and accurately portrays the matters recorded and if it "[w]ill aid in the understanding of the issues."  Ariz. Admin. Code R20-5-147(C).  The ALJ has broad discretion in determining the admissibility of evidence.  *Epperson v. Indus. Comm'n*, 26 Ariz. App. 467, 471, 549 P.2d 247, 251 (App. 1976).

---

[1]        Absent material revisions after the relevant date, we cite a statute's current version.

¶13          Here, Savin did not object during the hearing to the ALJ considering the video. Moreover, the video was relevant to the issue of loss of earning capacity because it formed the basis of Dr. Sahasrabudhe's revised medical opinion that Savin could return to her pre-injury employment without medical restrictions. Savin had adequate opportunity to explain or respond to this evidence, both during her own testimony and by eliciting Dr. Fanto's opinion that the activities depicted were consistent with Savin's lifting restrictions. Accordingly, the ALJ did not err by admitting and considering the surveillance video.

¶14          Savin also argues the ALJ's decision—that she was medically able to return to her prior employment and thus had not suffered a loss of earning capacity—was not supported by the evidence. She claims that the ALJ misinterpreted the activities shown in the surveillance video and erroneously resolved the conflict in the medical evidence in favor of Dr. Sahasrabudhe's revised opinion.

¶15          Although much of the surveillance footage showed irrelevant activities, the video also showed Savin extend her right arm vertically to close the tailgate of a vehicle. Dr. Sahasrabudhe explained that this activity involved Savin reaching upward with a range of motion around 170 or 180 degrees (as well as pulling the tailgate with her arm fully extended), which contrasted with the restricted 130 degree active range of motion that Savin displayed during the IME. Because the limitations on range of motion during the IME were subjective—that is, limited by pain rather than physical resistance in the shoulder—the footage showing Savin exceeding these limitations without apparent discomfort called into question Dr. Sahasrabudhe's initial findings based on the IME and supported the conclusion that Savin could return to her pre-injury employment without any medical restriction.

¶16          Given this basis for Dr. Sahasrabudhe's revised opinion, the ALJ's resolution of the conflict between the medical experts' testimony in favor of Dr. Sahasrabudhe's opinion was not wholly unreasonable. *See Stainless Specialty*, 144 Ariz. at 19, 695 P.2d at 268. Dr. Sahasrabudhe's opinion that Savin suffered no ongoing medical restriction associated with the shoulder injury supports the ALJ's conclusion that Savin could return to her pre-injury employment without limitation, thus establishing no loss of earning capacity. *See* A.R.S. § 23-1044(C)–(D) (loss of earning capacity determined by difference between wage from pre-injury employment and potential post-injury employment). Although Savin disputed Dr. Sahasrabudhe's characterization of her activities shown in the video, we defer to the ALJ's credibility determinations. *See Royal Globe Ins. Co. v.*

*Indus. Comm'n*, 20 Ariz. App. 432, 434, 513 P.2d 970, 972 (App. 1973). In light of the reasonable basis for the ALJ's decision, we affirm the award. *See Lovitch,* 202 Ariz. at 105, ¶ 16, 41 P.3d at 643.

## CONCLUSION

¶**17**     The award is affirmed.



Ruth A. Willingham · **Clerk of the Court**
F I L E D : ama