NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARY A. TORRES, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

CANTEEN CORPORATION,

*Respondent Employer*,

TRANSPORTATION INSURANCE COMPANY,

*Respondent Carrier.*

No. 1 CA-IC 17-0053
FILED 7-17-2018

Special Action - Industrial Commission
ICA Claim No.  0000P060305
Carrier Claim No. 63267823 B2
The Honorable Rachel C. Morgan, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Mary A. Torres, Santa Fe, NM
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent, ICA*

Jones Skelton & Hochuli PLC, Phoenix
By Gregory L. Folger, Jennifer B. Anderson
*Counsel for Respondent Employer/Carrier*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James P. Beene joined.

---

**C A M P B E L L**, Judge:

¶1        Mary Torres seeks review of an Industrial Commission of Arizona ("Commission") award dismissing her petition to reopen her workers' compensation claim. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Mary Torres worked for Canteen Corporation ("Employer") as a janitor. On June 8, 1987, Torres was injured at work when she was washing debris off floor mats at the back of a loading dock. She slipped and fell, injuring her leg. She went to the emergency room where x-rays of her left knee were taken. She was placed in a knee immobilizer and given prescriptions for pain relievers.

¶3        Torres sought treatment from A.H. Scott, D.O., an orthopedic surgeon, who treated Torres with pain relief medication and physical therapy for her knee. Dr. Scott recommended Torres undergo an arthroscopic examination of the knee, which revealed fraying and tearing of her lateral meniscus and hypertrophic synovitis.[1]

---

[1]        "Hypertrophic" pertains to "hypertrophy," which is "the enlargement or overgrowth of an organ or part due to an increase in size of its constituent cells." *Dorland's Illustrated Medical Dictionary* 745 (25th ed. 1974) ("*Dorland's*").

**¶4**        Post operation, Torres stated that her knee felt "somewhat better," although it still throbbed after sitting for an extended period of time and swelled if she stood for too long. Dr. Scott released Torres to go back to work with no restrictions. By January 1988, Torres denied having any pain in her left knee, "although she [did] have popping and stiffness" at times and reported "some swelling" and pain during periods of cold weather.

**¶5**        Jon Whisler, M.D., performed an independent medical evaluation in December 1988 and determined Torres did not suffer any further injuries in her knee, nor did she need any additional medical or supportive care. Dr. Whisler determined Torres had a 10 percent permanent physical impairment because of her industrial injury. Torres was discharged on December 22, 1988.

**¶6**        Howard Sweeney, M.D., examined Torres and diagnosed her with chondromalacia[2] of the patella in March of 1988.[3] Subsequent orthopedic records between 1988 and 2004 indicated that Torres did not have increased discomfort in her knee; her discomfort "remain[ed] about the same" and her pain "did not significantly worsen or change" during this time. Torres did not begin exhibiting knee pain again until June of 2004. She now lived in New Mexico. She began feeling stiffness and popping in her left knee with occasional locking when she sits and stands. Her doctor at that time, Zachary Adler, M.D., diagnosed her with patellofemoral chondromalacia in her left knee. Torres continued to receive physical therapy and other treatments from another physician, Andrew J. Veitch, M.D., for her knee pain through 2005 and reported that her pain was somewhat improving.

**¶7**        Like Torres' treating physicians in New Mexico, Dr. Veitch diagnosed her with left patellofemoral chondromalacia and found that this was a chronic condition. Torres had another MRI ordered by her doctor. Upon review of the results, Dr. Veitch concluded Torres predominantly

---

 "Synovitis" is "inflammation of a synovial membrane. It is usually painful, particularly on motion, and is characterized by a fluctuating swelling." *Dorland's* at 1530.

[2]        "Chondromalacia" is the softening of the cartilage. *Dorland's* at 310.

[3]        Also called "Patellofemoral Chondromalacia" which is the "premature degeneration of the patellar cartilage, the patellar margins being tender so that pain is produced when the patella is pressed against the femur." *Dorland's* at 310.

suffered from degenerative osteoarthrosis[4] with diffuse thinning of the articular cartilage, and bone marrow edema.[5] Dr. Veitch recommended conservative treatment and continued physical therapy. He determined Torres' issues will be "ongoing" but did not recommend surgical interventions or any further injections.

¶8 In 2005, Torres filed a petition to reopen her claim, which was denied. She requested a hearing on her petition. Before the hearing, an independent medical examination was performed by Douglas W. Kelly, M.D., who diagnosed Torres with status post partial lateral meniscectomy, lateral compartment chondromalacia, and mild patellofemoral[6] syndrome of her left knee. Dr. Kelly opined, however, that Torres' "lateral compartment osteoarthritis appear[ed] to be a pre-existing condition" but may have slightly worsened since her industrial injury. Dr. Kelly further opined that Torres' patellofemoral syndrome "appear[ed] to be mild and unrelated" to her industrial injury. He also stated that Torres' industrial injury required "no further active medical treatment" but he does believe that Torres should be considered for supportive care. The administrative law judge ("ALJ") issued a decision on March 10, 2006 and granted Torres supportive care.

¶9 On September 9, 2016, Torres filed a second petition to reopen because of a "new, additional, or previously undiscovered" condition or disability, which "require[d] active treatment and surgery and is disabling" as a proximate result of her industrial injury. She attached medical reports from Dr. Veitch and Brad Cucchetti, D.O., who had both been treating her for two years leading up to the filing of her petition. Her petition was denied, and she requested a hearing, which was granted and took place in February 2017.

¶10 At the hearing, Torres testified that both Dr. Veitch and Dr. Cucchetti recommended she have "total knee replacement surgery." After conflicting expert medical testimony was given, the ALJ denied Torres' petition to reopen. Torres filed a request for review of the decision, which was granted. The ALJ affirmed the decision on August 3, 2017. She

---

[4] Osteoarthrosis is "chronic arthritis of noninflammatory character." *Dorland's* at 1105.

[5] Edema is the "presence of abnormally large amounts of fluid in the intercellular tissue spaces of the body." *Dorland's* at 494.

[6] Patellofemoral pertains to the patella and the femur. The patella is a bone situated at the front of the knee and the femur is the bone that extends from the pelvis to the knee. *Dorland's* at 576, 1147.

timely sought special action review by this court on September 1, 2017. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

**¶11**     We defer to the Commission's factual findings, but we review questions of law de novo. *Young v. Indus. Comm'n of Ariz.*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We view the evidence in the light most favorable to sustaining the Commission's award and will affirm its decision if we find reasonable evidence supports its findings. *Lovitch v. Indus. Comm'n of Ariz.*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

**¶12**     Torres seems to suggest her claim should be reopened because of inaccuracies in the expert medical testimony. She argues that the ALJ erred by giving more weight to the medical testimony of David Bailie, M.D., over that of Dr. Veitch. Additionally, she claims Dr. Bailie did not take her "increased pain" into consideration.[7]

**¶13**     An applicant seeking to reopen their workers' compensation claim must prove, by a preponderance of the evidence: (1) the existence of a "new, additional or previously undiscovered temporary or permanent condition"; and (2) a causal relationship between that condition and the prior industrial injury. A.R.S. § 23-1061(H); *Stainless Specialty Mfg. Co. v. Indus. Comm'n of Ariz.*, 144 Ariz. 12, 16, 19 (1985). To justify reopening her claim, Torres bears this burden of proof on both factors. *Lovitch*, 202 Ariz. at 105-06, ¶ 17. "A claim shall not be reopened because of increased subjective pain if the pain is not accompanied by a change in objective physical findings." A.R.S. § 23-1061(H). "If the injury is not readily apparent to a layman, the existence of a condition can be established only by expert medical testimony." *Kaibab Indus. v. Indus. Comm'n of Ariz.*, 196 Ariz. 601, 608, ¶ 22 (App. 2000).

---

[7]     She also seems to argue the ALJ erred in denying her petition to reopen because the expert medical testimony given is "lack[ing] acknowledgment of [her] supportive award," which was awarded by the ALJ in her first petition to reopen, and that she has not been provided with the appropriate supportive care. Torres waives this argument on appeal. She did not cite to relevant supportive legal authority, and she did not develop her legal argument. *Cf.* Ariz. R. Civ. App. P. 13(a)(7); *See Polanco v. Indus. Comm'n of Ariz.*, 214 Ariz. 489, 491 n. 2, ¶ 6 (App. 2007).

¶14        Assessing the advisability of reopening a claim "mandates an evaluative, comparative process." *Blickenstaff v. Indus. Comm'n of Ariz.*, 116 Ariz. 335, 339 (App. 1977). Here, the ALJ found that the appropriate dates for comparative analysis were between August 23, 2005, when Torres' last petition to reopen was denied, and September 9, 2016, the date she filed her current petition to reopen.

¶15        Dr. Veitch treated Torres from May 2010 through February 10, 2017. He testified that Torres has now developed bone-on-bone arthritis in her lateral compartment and "some degeneration" in her kneecap, which can be found in her May 2015 x-rays. Dr. Veitch also testified that due to Torres' inability to respond to nonoperative treatment, she would be a candidate for knee replacement surgery. He opines that this potential surgery is related to the original injury Torres sustained in 1987. He stated that he made these determinations due to Torres developing "posttraumatic osteoarthritis" as a result of her 1987 injury and the subsequent surgery she underwent afterwards.

¶16        On the other hand, after reviewing Torres' medical records, Dr. Bailie, a board-certified orthopedic surgeon who specializes solely in shoulder and knee problems, testified that he did not see bone-on-bone arthritis in Torres' 2016 x-rays. He opined, based on the new films, bone-on-bone arthritis was not present. He further testified that Torres suffers from obesity class 1 and degenerative arthritis in both knees, which is formally called "chondrocalcinosis." He stated that chondrocalcinosis is a "metabolic problem," meaning it is progressive and will necessitate a total knee replacement in time. He opines that this metabolic problem has no relation to the surgery that was done back in the "late '80s" after Torres sustained her industrial injury. Dr. Bailie also stated that two or three simple steroid injections per year, coupled with weight loss, may eliminate the need for knee replacement surgery in the future. Moreover, he does not believe knee replacement surgery is needed at this time and that more conservative care should continue before proceeding with a total replacement.

¶17        Dr. Bailie concluded that if total knee replacement surgery became necessary, it will be necessitated by the occurrence of the progressive degeneration, caused by the chondrocalcinosis. He opines that the "chondrocalcinosis biologically essentially supersedes anything that [Torres] had done previously because now she has [a] diffuse disease throughout [her] knee" and thus the surgery is "really being done . . . for that." Hence, Dr. Bailie did not causally relate the need for the potential knee replacement surgery with her industrial injury.

**¶18** Where there is a conflict in expert medical testimony, "it is the responsibility of the administrative law judge to resolve it." *Stainless Specialty Mfg. Co.*, 144 Ariz. at 19. Moreover, it is the duty of the ALJ to resolve such conflicts in the evidence and "determine which opinion is more probably correct." *Kaibab Indus.*, 196 Ariz. at 609, ¶ 25. Only if an award is "unsupported by any reasonable theory of evidence" will we reverse the ALJ's decision. *Id.*

**¶19** The record shows that there is reasonable evidence to support the ALJ's decision denying Torres' petition to reopen. After having considered the testimony, qualifications, and experience of both Dr. Veitch and Dr. Bailie, the ALJ adopted Dr. Bailie's testimony as "more probably correct" as Dr. Bailie based his findings and opinions on pertinent and updated medical information.

**¶20** This court will not disturb the ALJ's findings unless those findings cannot be supported by any reasonable theory of the evidence. *Phelps v. Indus. Comm'n of Ariz.*, 155 Ariz. 501, 506 (1987). Because the conflict between the two medical experts' testimony was resolved "in such a way that [the ALJ's] findings are reasonably supported by the evidence," we find no abuse of discretion. *See Condos v. Indus. Comm'n*, 92 Ariz. 299, 301-02 (1962). As this court has explained, even if the record supports inconsistent conclusions, we may not "substitute our judgement for that of the ALJ" because conflicting evidence may nonetheless be "substantial" evidence. *Shaffer v. Ariz. State Liquor Bd.*, 197 Ariz. 405, 409, ¶ 20 (App. 2000).

## CONCLUSION

¶21 Because we find that the evidence of record reasonably supports the ALJ's award, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA